2006 OK CIV APP 131

Ben LAMPKIN d/b/a Lampkin & Wolfe, on behalf of himself and all others similarly situated, Plaintiff/Appellant,

v.

GGH, INC.; J.E.G. Enterprises, LLC d/b/a Jim Glover Dodge; Phillip M. West; and Monthmaker, Inc., Defendants/Appellees.

No. 101,730.

Court of Civil Appeals of Oklahoma, Division No. 2.

Aug. 22, 2006.

Rehearing Denied Sept. 26, 2006.

Billy D. Griffin, Jason B. Reynolds, Griffin, Reynolds & Trout, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

James L. Gibbs, II, Goolsby, Olson & Proctor, Oklahoma City, OK, for Defendants/Appellees.

Opinion by JANE P. WISEMAN, Presiding Judge.

¶ 1 Ben Lampkin, d/b/a/ Lampkin & Wolfe, appeals an order of the trial court denying his motion for class certification. The sole issue on appeal is whether the trial court abused its discretion when it refused to certify Lampkin's proposed class. We find that the trial court abused its discretion in denying the motion for class certification and reverse its decision.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Lampkin filed a class action petition alleging that Defendants, GGH, Inc., and J.E.G. Enterprises, LLC d/b/a Jim Glover Dodge, and Phillip M. West and Monthmaker Inc., transmitted by a telephone facsimile (fax) machine an unsolicited advertisement to a fax machine owned by Lampkin. Lampkin, who claimed that he received the fax without giving Defendants prior express invitation or permission to send the advertising materials, stated that he believed that over the previous four years, Defendants had sent similar unsolicited advertisements via fax to other individuals and businesses throughout the state of Oklahoma. Lampkin claimed that Defendants' actions violated 47 U.S.C.A. § 227.

¶ 3 Lampkin defined the plaintiff class "as all persons or entities in Oklahoma who received facsimile transmissions from [Defendants] during the period of four years prior to the date of the filing of the Complaint [April 12, 2004] which contained any material advertising the commercial availability or quality of any property, goods or services without that person's or entity's prior expressed [sic] invitation or permission." He further claimed the following: (1) the class is so numerous that joinder is impracticable, (2) there are questions of law or fact common to the members of the class, (3) he is a member of the class that he seeks to represent and his claims are typical of the members of the class, (4) he will adequately represent and protect the interests of the class, (5) the prosecution of separate actions by members of the class would create inconsistent adjudications with respect to individual members, (6) class action is superior to other methods for the fair and efficient adjudication of the controversy at issue, (7) he anticipates no unusual difficulties in the management of the litigation, and (8) class certification is appropriate under Oklahoma law because there is no indication that individual claimants wish to be excluded from the class, there are no other known actions regarding this controversy, and a class action will facilitate the comprehensive resolution of the claims.

¶ 4 Lampkin's common questions of law and fact included (1) whether Defendants violated the provisions of 47 U.S.C.A. § 227, and (2) whether Defendants willfully or knowingly violated the provisions of 47 U.S.C.A. § 227.

¶ 5 After GGH and J.E.G. filed their answer denying Lampkin's allegations, Lampkin filed a motion for class certification with a brief in support in which he states that he represents a class of individuals who received unsolicited fax advertisements for the four years prior to April 12, 2004. He claims that each class member was harmed in precisely the same manner, the vast majority of the members will be unaware that they have been wronged, and the individual damages suffered by the class members are too small to warrant prosecution of individual claims.

¶ 6 Lampkin claims that the proposed class meets all the prerequisites of Oklahoma's class action statute, 12 O.S.2001 § 2023(A): numerosity, commonality, typicality, and adequacy of representation. He claims (1) the numerosity requirement is met because Defendant Phillip West stated in his answers to request for admissions and interrogatories that unsolicited faxes were sent to between 6,000 and 7,000 individuals; (2) the commonality requirement is met because Defendants engaged in uniform practices in violation of § 227 which gave rise to the claims and each class member is entitled to a statutory remedy; (3) the typicality requirement is met because all of the class members have identical claims for the violation of § 227 and have identical statutory remedies; and (4) the adequacy of representation requirement is met because he has retained counsel experienced in class actions and complex litigation.

¶ 7 Lampkin further claims that the additional requirements of § 2023(B)(3) are met because: (1) the questions of law and fact common to the class predominate over questions affecting individual members because the common issues concerning Defendants' actions "pervade this action and dwarf any individual issues that may exist," and (2) a class action is superior to other forms of adjudication because this action involves so many relatively small claims that, if the class members pursued their claims individually, it "would unduly and unnecessarily clog the judicial system of this state," and without a class action, thousands of deserving class members may not get their day in court.

¶ 8 Defendants GGH and J.E.G. filed a response opposing Lampkin's motion for class certification, claiming that the proposed class does not meet the requirements of § 2023(B)(3) because: (1) Lampkin cannot meet the predominance requirement, because "an inquiry to each potential class member must be made as to the person's prior express invitation or permission or previous established business relationship," and (2) he cannot meet the superiority requirement because the only beneficiaries in this action would be the plaintiffs' lawyers due to the fact that "the maximum amount of damages recoverable for each allegation is $500, [so] the cost of notice to all potential class members would greatly exceed any potential recovery." Defendants further claim that class certification is not proper because the class is not identifiable without an evidentiary hearing involving each prospective member to determine when and if the prospective member received a fax from Defendants, whether the fax was permissive or invited, and whether the prospective member had ever done business with Defendants. They further claim that Lampkin cannot be an adequate representative for the class "because his stake in this litigation is minimal at best and it is not sufficient to motivate him to manage and control this litigation on behalf of the potentially thousands of proposed class members."

¶ 9 In his reply, Lampkin claimed that Defendants' assertion that individual class members would have to testify regarding prior permission is incorrect because a claim of prior express permission is an affirmative defense on which Defendants have the burden of proof. Lampkin further claimed that implied permission due to previous business dealings is not a defense because any permission to send "junk faxes" must be express and not implied under § 227.

¶ 10 In response, Defendants reiterated their claim that thousands of evidentiary hearings would be required and that the cost of notifying class members would probably consume any potential recovery.

¶ 11 The trial court ruled on the motion for class certification based on the briefs and responses submitted by the parties without an evidentiary hearing. The court announced the following findings:

- "[I]t is impossible to clearly identify and define the class by this vehicle in the method that has been filed in this case."
- "[T]he violations of the Act cannot be proven for each potential putative class member through the facts as they are for each of the representative class members. It would require individual proof of each putative class member."
- "[D]efendants would have individual and possibly diverse and different defenses as to each putative class member."
- "[T]he damages under the Act are potentially different for each class member."

The trial court denied Lampkin's motion for class certification. Lampkin appeals the trial court's decision.

## STANDARD OF REVIEW

¶ 12 We will only reverse a trial court's order denying class certification if there is a showing of abuse of discretion. *KMC Leasing, Inc. v. Rockwell–Standard Corp.,* 2000 OK 51, ¶ 8, 9 P.3d 683, 687. A trial court's denial of class certification "is deemed to rest on an adequate record when any one of the five requisites for class certification appears to be absent." *Id.*

## ANALYSIS

¶ 13 Lampkin brought this action against Defendants for their alleged violation of the Telephone Consumer Protection Act (TCPA),

and specifically 47 U.S.C.A. § 227(b)(1)(C) (2001 & Supp.2006) which provides that it shall be unlawful "to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." An "unsolicited advertisement" was defined by the TCPA at the time Defendants sent the faxes as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C.A. § 227(a)(4) (2001).[1] Section 227(b)(3),[2] which addresses a private right of action, provides the following:

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

¶ 14 Lampkin asserts that Defendants violated § 227 by sending unsolicited faxes to numerous fax machines in Oklahoma, and they have brought an action in an Oklahoma district court to recover damages for the violations. Lampkin seeks not only to pursue the action on his behalf but also on behalf of "all persons or entities in Oklahoma who received facsimile transmissions from [Defendants] during the four year period" prior to the date he filed his petition. Lampkin claims that there is a "possibility of over 12,000 to 14,000 individual faxes being sent out to 6,000 to 7,000 people without the express permission of the [r]ecipients" and that he represents the class of consumers who received unsolicited faxes. Lampkin specifically characterized the class he seeks to represent as follows: "Himself and all entities and persons domiciled or residing in the State of Oklahoma who received unsolicited fax advertisements from Jim Glover Dodge for the four years prior to April 12, 2004."

¶ 15 In Oklahoma, class actions are governed by 12 O.S.2001 § 2023, which provides, in pertinent part, the following:

A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A of this section are satisfied and in addition:

* * * *

3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudica-

---

1. Congress amended 47 U.S.C.A. § 227 in 2005. The definition of unsolicited advertisement can now be found in subsection (a)(5) which provides that "[t]he term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, *in writing or otherwise*." (Emphasis indicates language added by the amendment.)

2. 47 U.S.C.A. § 227(b)(3) remained unchanged by the 2005 amendments.

tion of the controversy. The matters pertinent to the findings include:

    a.  the interest of members of the class in individually controlling the prosecution or defense of separate actions,

    b.  the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,

    c.  the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and

    d.  the difficulties likely to be encountered in the management of a class action.

¶ 16 The requirements of subsection (A) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. "A party seeking certification of a class action has the burden of satisfying all four requirements of [subsection (A)] and one of the criteria listed in [subsection (B)]." *First Life Assurance Co. v. Mountain,* 1993 OK CIV APP 20, ¶ 4, 848 P.2d 1177, 1178–79.

¶ 17 We find that the trial court abused its discretion in failing to certify the class advanced by Lampkin because Lampkin met his burden of satisfying all four requirements of subsection (A) and one of the criteria listed in subsection (B).

¶ 18 Lampkin asserts that the numerosity requirement is met because Defendant Phillip West stated in his answers to request for admissions and interrogatories that Defendants sent unsolicited faxes to between 6,000 and 7,000 individuals. We agree. "The numerosity test is satisfied by numbers alone when the size of the class is in the hundreds." *Black Hawk Oil Co. v. Exxon Corp.,* 1998 OK 70, ¶ 17, 969 P.2d 337, 343.

¶ 19 Lampkin claims that the commonality requirement is met because Defendants engaged in uniform practices in violation of § 227 which gave rise to the claims and each class member is entitled to a statutory remedy. Defendants assert there is no commonality because the trial court would have to make inquiries as to whether each potential class member gave permission for Defendants to send the fax and whether Defendants had a business relationship with each potential member. We find that the issues involving permission and/or a prior business relationship do not defeat the "commonality" of the class members' claims against Defendant.

¶ 20 First, the class defined by Lampkin consists of only those individuals who received *unsolicited* fax advertisements during the specified time period. The use of the term "unsolicited" would foreclose argument on the theory that some class members somehow gave prior permission to Defendants to send the faxes to their fax machines. Furthermore, we find that Defendants should bear the burden of showing that there are circumstances that remove their actions from the reach of the TCPA. If the Defendants want to assert that they either received prior permission from an individual to send the fax or that there was a prior established business relationship in defense to an individual's claim that he or she received an unsolicited fax, they should bear the burden of proving the existence of the permission or relationship. The recipients should not be charged with proving that they did not give permission or that they did not have a business relationship with Defendants. We reach this decision on the burden of proving permission or an established business relationship with the guidance of the FCC's interpretation of an established business relationship.

¶ 21 Prior to 1995, as a legislative matter, the TCPA did not expressly provide for an established business relationship exception. The Federal Communications Commission (FCC), the agency responsible for prescribing regulations to implement the requirements of the TCPA, previously determined that an established business relationship negates the need for express permission.

¶ 22 As early as 1992, the FCC recognized "that facsimile transmission from persons or entities who have an established business relationship with the recipient can be deemed to be invited or permitted by the recipient." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 7 F.C.C.R. 8752 n. 87, 1992 WL 690928 (September 17, 1992). In 2001,

the FCC stated, "An established business relationship ... demonstrates consent to receive fax advertisement transmissions." *FCC Reminds Consumers About "Junk Fax" Prohibition,* 16 F.C.C.R. 4524, 4524, 2001 WL 138410 (February 20, 2001). An established business relationship was then defined under 47 C.F.R. § 64.1200(f)(3) as follows:

The term established business relationship means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

¶ 23 In 2003, the FCC decided to reverse its "prior conclusion that an established business relationship provides companies with the necessary express permission to send faxes to their customers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 F.C.C.R. 14014, 14127, 2003 WL 21517853 (June 26, 2003). The FCC added subsection (a)(3)(i) to 47 C.F.R. § 64.1200, which states for the purposes of the section's prohibition against unsolicited fax advertisements,

[A] facsimile advertisement is not "unsolicited" if the recipient has granted the sender prior express invitation or permission to deliver the advertisement, as evidenced by a signed, written statement that includes the facsimile number to which any advertisements may be sent and clearly indicates the recipient's consent to receive such facsimile advertisements from the sender.

The FCC purposefully did not add an established business relationship exception. The FCC did, however, state, "We emphasize that, prior to the effectuation of rules contained herein, companies that transmitted facsimile advertisements to customers with

whom they had established business relationships were in compliance with the Commission's existing rules." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 F.C.C.R. 14014 n. 699, 2003 WL 21517853 (June 26, 2003). The FCC later stated, "[U]ntil the amended rule at 47 C.F.R. § 64.1200(a)(3)(i) becomes effective on January 1, 2005, an established business relationship will continue to be sufficient to show that an individual or business has given express permission to receive facsimile advertisements." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 F.C.C.R. 16972, 16975, 2003 WL 21961003 (August 18, 2003). The effective date of subsection (a)(3)(i) was delayed more than once by the FCC.

¶ 24 The FCC's version of § 64.1200(a)(3)(i) never became effective because the Junk Fax Protection Act, signed into law on July 9, 2005, amended the TCPA "to make clear that the [established business relationship] exemption applied to exclude facsimile advertisements from the prohibition of the TCPA." *Weitzner v. Iridex Corp.,* 2006 WL 1851441, *4 (E.D.N.Y.). The Junk Fax Act, PL 109–21 (119 Stat 359) added subsection (a)(2) to § 227 which now provides:

The term "established business relationship," for purposes only of subsection (b)(1)(C)(i) of this section, shall have the meaning given the term in section 64.1200 of title 47, Code of Federal Regulations, as in effect on January 1, 2003, except that—

(A) such term shall include a relationship between a person or entity and a business subscriber subject to the same terms applicable under such section to a relationship between a person or entity and a residential subscriber; and

(B) an established business relationship shall be subject to any time limitation established pursuant to paragraph (2)(G).

Subsection (b)(1)(C) now provides that it is unlawful to use a "telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited

advertisement, unless" the following requirements are met:

(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii) the sender obtained the number of the telephone facsimile machine through—

(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,

except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before such date of enactment; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E). . . .

47 U.S.C.A. § 227 (Supp.2006).

¶ 25 Although it is clear that the TCPA now includes an express established business relationship exception, all the faxes at issue here were sent prior to the amendment that explicitly added the exception. However, in specifically referring to the FCC's previous definition and interpretation of the exception and the specific time period that the FCC recognized the exception, Congress implicitly recognized that it agreed with the FCC's interpretation prior to 2003.

¶ 26 In response to the amendments, 47 C.F.R. § 64.1200(f)(5) now provides that in the context of unsolicited fax advertisements, established business relationship is defined as follows:

[A] prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party.

When amending § 64.1200, the FCC stated the following:

*To ensure that the [established business relationship (EBR)] exemption is not exploited, the Commission concludes that an entity that sends a facsimile advertisement on the basis of an EBR should be responsible for demonstrating the existence of the EBR. The entity sending the fax is in the best position to have records kept in the ordinary course of business showing an EBR, such as purchase agreements, sales slips, applications and inquiry records. (Digitized documents would be acceptable if kept in the ordinary course of business and if they established the existence of the EBR.) The Commission does emphasize that it is not requiring any specific records be kept by facsimile senders. Should a question arise, however, as to the validity of an EBR, the burden will be on the sender to show that it has a valid EBR with the recipient.*

71 Fed.Reg. 25967 (emphasis added).

¶ 27 The FCC's reasoning on the issue of the burden to prove an established business relationship is sound and applicable here. The Defendants are in a much better position to show the fax recipients with whom they had an established business relationship. Potential class members should not have to show that they did not have an established business relationship with Defendants in order to become a member of the class. If Defendants choose to assert that they have an established business relationship with a class member, Defendants may bring forth evidence in support of their defense. We see no reason to require every potential class

member to prove the absence of an established business relationship where Defendants are in the best position to show that the TCPA prohibition against junk faxes does not apply to them due to an established business relationship.

¶ 28 While it is the Defendants' burden to prove that any particular class member consented to the Defendants' faxes or had an established business relationship with the Defendants obviating the need for consent, it is, nonetheless, Lampkin's burden to include in the class only those who meet the class definition: individuals and entities who received an unsolicited fax. This is, presumably, some number less than all six or seven thousand who received faxes during the time in question. Lampkin may satisfy his burden through the initial notice procedure or any other process acceptable to the trial court. But, as defined by Lampkin, the potential class can consist of only those who claim to have received an *unsolicited* fax from the Defendants.

¶ 29 The fact that Defendants may claim they had an established business relationship with or permission from some of the class members does not defeat the commonality requirement. We disagree with the trial court's finding that Defendants would have a diverse and different defense as to each putative member. Defendants will only be able to raise a defense to a member's claim if they can produce evidence of an established business relationship or express permission to send the fax at issue. The questions of law and fact are common in both the assertions of the claims under the TCPA and the Defendants' defenses to those claims.

■ ¶ 30 We further find that Lampkin's claims against Defendants are typical, if not identical, to those of the other potential class members because Lampkin's claim arose out of the same action by Defendants, the sending of the unsolicited advertisement via fax, and the damages of the plaintiffs are specifically set out in the TCPA.

■ ¶ 31 We also find that Lampkin presented sufficient evidence that he will fairly and adequately represent the class he wishes to certify. His claim against Defendants is

identical to the claims of other class members. His assertion that the law firm representing him is experienced in class action litigation was unchallenged.

■ ¶ 32 Not only did Lampkin meet his burden of showing that his class meets all of the prerequisites of § 2023(A), we further find that he also met his burden under § 2023(B), by showing that the questions of law or fact common to the members of the class—whether Defendants violated TCPA by sending unsolicited fax advertisements—predominate over any questions that affect the individual members of the potential class.

■ ¶ 33 Additionally, Lampkin showed that a class action is superior to other available methods for adjudication of this controversy because this action involves so many relatively small claims that if the class members pursued their claims individually, it "would unduly and unnecessarily clog the judicial system of this state," and without a class action, thousands of deserving class members might not get their day in court.

¶ 34 In *Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, ¶ 25, 81 P.3d 618, 628, the Oklahoma Supreme Court stated that a class action is superior to individual litigation where individual claims are not substantial enough to support individual litigation and the "prosecution of separate individual actions would inevitably result in inconsistent results." Similarly, we find that a class action would be the superior method to adjudicate the TCPA claims at issue here because the $500 damage award is not sufficient to support individual litigation and the prosecution of each action would produce inconsistent results.

■ ¶ 35 We reject the trial court's finding that it is impossible to clearly identify and define the class at issue. The class is actually very easy to identify because it consists of persons or businesses that received an unsolicited fax advertisement from Defendants during a finite time period. Those persons who received an unsolicited fax can become members of the class, and those who did not receive an unsolicited fax cannot be members of the class. The common issues of law and fact and the predetermined amount

of damages show that this potential class of plaintiffs is the very type of class for which class action treatment was designed.

¶ 36 If the trial court felt this was a close question, "[t]he pragmatically correct action, in the face of a close question as to certification, has been said to sustain certification because if it develops later during the course of the trial that the order is ill-advised, the order is always (prior to judgment on the merits) subject to modification." *Id.* at ¶ 5, 81 P.3d at 623 (quoting *Perry v. Meek,* 1980 OK 151, ¶ 19, 618 P.2d 934, 940).

¶ 37 For the foregoing reasons, the denial of class certification constitutes an abuse of discretion requiring reversal.

### CONCLUSION

¶ 38 We conclude that the trial court abused its discretion in denying Lampkin's motion for class certification. We therefore reverse the denial and remand the matter to the trial court to certify the class as proposed and to proceed in a manner not inconsistent with this opinion.

¶ 39 REVERSED AND REMANDED.

GOODMAN, J., and FISCHER, J., concur.