Carol **KONDOS**, Carol Chapman Kondos, P.C. D/B/A Kondos & Kondos, all Individually and on Behalf of all Others Similarly Situated, Appellants,

v.

**LINCOLN PROPERTY COMPANY,** Lincoln Eastern Management Corporation, as General Partner of EQR Lincoln, Ltd., Appellees.

No. 05–02–00105–CV.

Court of Appeals of Texas,
Dallas.

July 22, 2003.

Keith M. Jensen, Law Office of Keith M. Jensen, P.C., Fort Worth, for Appellants.

Debra Janece Mccomas, Nina Cortell, Haynes and Boone, L.L.P., Dallas, for Appellees.

Before Justices MOSELEY, BRIDGES, and LANG.

## OPINION

Opinion By Justice MOSELEY.

The trial court granted summary judgment in favor of the appellees (collectively "Lincoln") on alleged violations by Lincoln of the Telephone Consumer Protection Act ("TCPA"). In ten issues, appellants (collectively "Kondos") contend the trial court erred by granting summary judgment in favor of Lincoln. On cross-appeal, Lincoln again asserts the trial court abused its discretion by certifying the class in this suit. Because we sustain Lincoln's cross-point, we reverse the trial court's judgment and remand this suit for further proceedings.

## BACKGROUND

Lincoln owns numerous apartment complexes in the Dallas area. To market its apartments to prospective tenants, Lincoln entered into twenty-four contracts with American Blast Fax, Inc. ("ABF")[1] to send facsimiles ("faxes") advertising eighteen of Lincoln's properties. For some of those contracts, confirmation receipt logs exist for the faxes sent; for most of the contracts, however, no such logs exist.

The TCPA provides, "It shall be unlawful for any person within the United States to *use* any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C) (emphasis added). Kondos sued Lincoln alleging it violated the TCPA by having ABF send faxes on its behalf.[2] Lincoln answered, asserting, *inter alia*, that it had not "used" a device to send fax advertisements, and that it was not liable under the TCPA for fax advertisements sent by ABF.

Pursuant to Texas Rule of Civil Procedure 42, Kondos sought to certify twenty-three sub-classes, each generally corresponding to one of the contracts between Lincoln and ABF. Kondos also sought a ruling from the trial court that there was not an "implied permission" exception to the definition of "unsolicited advertisement" in the TCPA, and thus evidence of any "existing business relationship (EBR)" with the fax recipients would be irrelevant.

1. ABF, one of the defendants in this case, did not file an answer and is not a party in either of the appeals brought before this Court.

2. Michael W. Shore and Shore & Fineberg, L.L.P. were the original plaintiffs in this suit. However, after this suit was filed, appellants were added as plaintiffs. On April 10, 2001, the trial court signed an order nonsuiting the claims of Michael W. Shore and Shore & Fineberg, L.L.P.; thus, Michael W. Shore and Shore & Fineberg, L.L.P. are not parties in either of the appeals brought before this Court.

On July 12, 2001, the trial court certified a single opt-out class comprised of members who are "holders of telephone numbers that were confirmed to have received faxes from ABF on behalf of [Lincoln]." The July 12 order also held, as Kondos had requested, that there was no EBR or "implied permission" exception to the definition of an "unsolicited advertisement" under the TCPA.[3]

Lincoln brought an interlocutory appeal of the class certification issue. While the interlocutory appeal was pending, both sides filed motions for summary judgment.[4] Before we heard oral argument in the interlocutory appeal, the trial court granted Lincoln's motion for summary judgment, holding that Lincoln "did not violate the [TCPA] as a matter of law because they did not use a facsimile machine to send an unsolicited advertisement" and "because they are not liable for the acts of an independent contractor, [ABF]." On December 19, 2001, and over the objections of both Kondos and Lincoln,[5] the trial court *sua sponte* signed an order directing notice be given to all class members by publication in *The Dallas Morning News*. The ordered notice ran from December 21–28, 2001. No absent class member responded to the notice or requested to opt-out of this suit. After all non-TCPA claims had either been severed or non-suited, the trial court signed a final judgment on January 18, 2002.[6]

Kondos appealed from the final judgment, asserting the trial court eviscerated the TCPA's ban on unsolicited faxes by improperly interpreting the TCPA to apply only to the "button pusher" (ABF) and not to the advertiser (Lincoln) and by concluding the advertiser is not liable for unsolicited faxes sent by an independent contractor.

Lincoln brought a cross-point on appeal, asserting "in an abundance of caution," another challenge to the trial court's decision to certify the class. Specifically, it argued that the class should not have been

---

3. Based on the class certified by the trial court and according to Kondos's brief in the interlocutory appeal, Lincoln was potentially liable for 63,760 separate violations of the TCPA.

4. Both sides submitted motions for summary judgment prior to the trial court certifying the class in this case. However, after the trial court issued its order certifying a class and after Lincoln filed its notice of appeal, both sides filed second motions for summary judgment.

5. In response to Kondos's motion for severance and final judgment against ABF, Lincoln suggested that any final judgment would be premature before resolution on the interlocutory class certification appeal. Additionally, Lincoln continued to assert the class was improperly certified. Nevertheless, Lincoln also argued that before any final judgment could be rendered against any party on behalf of the class, notice would have to be given. In order to achieve finality of the summary judgment, the trial court *sua sponte* severed the

claims against Lincoln and issued a final judgment for Lincoln; it additionally ordered both parties to submit proposals for the contents of the notice. Subsequent to the trial court's *sua sponte* orders, Kondos, in two letters to the court, objected on the basis that the court did not have the authority to order class notice while the interlocutory appeal was pending. Kondos also advocated, unsuccessfully, that any notice to the class should include the following in bold letters: "CLASS COUNSEL ADVISES ALL CLASS MEMBERS TO OPT OUT."

6. In an opinion issued today, we dismissed the interlocutory appeal as moot because, while that appeal was pending and in violation of TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(b), the trial court heard and decided motions for summary judgment, entered a final judgment, and subsequently lost plenary jurisdiction over the case below. *Lincoln Prop. Co. v. Kondos*, No. 05–01–01228–CV, slip op., 110 S.W.3d 712, 2003 WL 21693666 (Tex.App.-Dallas July 22, 2003, no pet. h.).

certified because: (a) Kondos lacked standing to bring both individual and class claims; (b) individual issues predominate over the common issues; (c) a class action is not the superior means for adjudicating TCPA claims; (d) Kondos's claims are not typical of the class; (e) the trial court issued an inadequate trial plan; and (f) the class was improperly defined. Because the disposition of the class certification issue impacts our disposition of the remainder of the issues presented for our review, we address Lincoln's cross-point first.

## CLASS CERTIFICATION

On appeal, we determine whether a trial court abused its discretion in deciding whether to grant or deny class certification. *Wal–Mart Stores, Inc. v. Lopez,* 93 S.W.3d 548, 553 (Tex.App.-Houston [14th Dist.] 2002, no pet.). A trial court abuses its discretion when it: (1) acts arbitrarily or unreasonably; (2) does not properly apply the law to the undisputed facts; or (3) rules on factual assertions not supported by the record. *Id.* The supreme court has rejected what it described as a "certify now and worry later" philosophy towards class certification. *Southwestern Ref. Co., Inc. v. Bernal,* 22 S.W.3d 425, 435 (Tex.2000). Consequently, actual, and not presumed, compliance with rule 42 is required when a trial court decides to certify a class action. *See Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 690–91 (Tex. 2002) (quoting *Bernal,* 22 S.W.3d at 434–35); *see also* TEX.R. CIV. P. 42.

Accordingly, we do not view the evidence in the light most favorable to the trial court's decision in either granting or denying certification, nor do we entertain every presumption in favor of the trial court's decision. *Stromboe,* 102 S.W.3d at 691. We determine whether a trial court, before ruling on a class certification, has performed a "rigorous analysis" on whether all prerequisites to certification have been met. *Bernal,* 22 S.W.3d at 435. If a trial court fails to conduct such an analysis, we must conclude the court abused its discretion in granting class certification. *See id.*

The proponents of a class action must establish the right to maintain the suit as a class action. *Vinson v. Tex. Commerce Bank–Houston, Nat'l Ass'n,* 880 S.W.2d 820, 823 (Tex.App.-Dallas 1994, no writ); *see also Sun Coast Res., Inc. v. Cooper,* 967 S.W.2d 525, 529 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.) (no automatic right to bring a lawsuit as a class action in Texas). Furthermore, a judgment in a class action case binds the entire class, not just the named parties. *Vinson,* 880 S.W.2d at 823; *see also Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 452 (Tex.2000). Accordingly, the supreme court has stated that the trial court has a duty to protect the absent class members. *See Gen. Motors Corp. v. Bloyed,* 916 S.W.2d 949, 953–54 (Tex.1996).

A class action may be maintained only if it meets all four requirements of rule 42(a).[7] In addition, a class action must meet one of four other requirements under rule 42(b). In this case, the trial court based its certification order on the requirement that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." TEX.R. CIV. P.

---

7. Rule 42(a) provides that one or more members of a class may sue on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. TEX.R. CIV. P. 42(a).

42(b)(4). We consider rule 42(b)(4)'s "predominance" requirement first because it is so stringent. *See Wal–Mart,* 93 S.W.3d at 554.

■■■ Courts determine whether common issues predominate by identifying the substantive issues that will control the outcome of the litigation, assessing which issues will predominate, and determining if those predominant issues are common to the class. *Bernal,* 22 S.W.3d at 434. The test for determining whether common issues predominate is not whether the common issues outnumber individual issues, but whether common or individual issues will be the object of most of the litigants' efforts. *Id.* "If, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate." *Id.* "[A] judgment in favor of the class should settle the entire controversy and all that should remain is for the other class members to file their proof of claims." *Wal–Mart,* 93 S.W.3d at 554.

■■■ The trial court in this case concluded that the common questions predominate over individual questions. The court identified as common issues: "the manner in which the faxes were sent; whether intrastate transmissions are within the scope of the TCPA; whether a principal is liable under the TCPA for the acts of an independent contractor; which party bears the burden of showing the absence of prior express permission; and statutory damages."[8] The court concluded that most issues would be resolved by summary judgment. The court determined that "the existence of express permission [was] an individualized question." However, it concluded that whether the class members

gave express invitation or permission to receive the faxes could "probably be resolved by summary judgment." The court explained that "it should be relatively easy to ascertain whether any class member did give prior express permission," because "the number of [persons giving prior express permission] is relatively small."

We fail to see how the parties' efforts will be spent predominantly on the issues the trial court defined as common among the class. For the most part these issues are questions of law. Although some of them may be legally complex, the amount of the parties' efforts necessary to brief and argue these issues to the trial court does not appear to be extensive.

In contrast, even if only a relatively small number of the class members gave express permission to receive the faxes in question, either a jury or the trial court (by summary judgment or otherwise) must still ascertain whether each class member gave or did not give express permission to receive the faxes in question. *See* 47 U.S.C. §§ 227(a)(4), (b)(1)(C). The individualized issues of whether each of the 63,760 class members gave or did not give express permission is not likely to be a "relatively easy" task for a single jury or the trial court to resolve, and clearly "will be the object of most of the litigants' efforts." *See Bernal,* 22 S.W.3d at 434.

*Forman v. Data Transfer, Inc.,* 164 F.R.D. 400 (E.D.Pa.1995), is another case involving whether to certify a class of plaintiffs asserting claims under the TCPA. The court in *Forman* noted that the TCPA prohibits a person from sending an "unsolicited advertisement" to a fax machine, and that the TCPA defines an "unsolicited advertisement" as "any mate-

---

**8.** Although Lincoln argued the EBR issues would be individualized and extensive, the trial court concluded in the certification order

that "there is no 'EBR' or 'implied permission' exception to the definition of unsolicited advertisement for faxes."

rial advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission."* *Id.* at 402 (citing 47 U.S.C. §§ 227(a)(4), (b)(1)(C)) (emphasis added). On that basis, the court concluded that, by definition, "[T]he essential question of fact that each potential plaintiff must prove is whether a specific transmission to its [facsimile] machine was without express invitation or permission on its part." *Id.* at 404.

Based on the requirement that each plaintiff must prove no express invitation or permission to establish a violation of the TCPA, *Forman* held that the individual issues of express invitation or permission predominated over common issues; thus, the court denied certifying a class alleging violations of the TCPA. *Id.* at 404–05. The *Forman* court explained that "[p]laintiff's proposed 'common' questions[, including whether or not express invitation or permission was given,] are inherently individualized, requiring inquiry into the particular circumstances of each transmission." *Id.* The court further explained that the "gravamen of [a] plaintiff's complaint is not a common course of conduct by [a] defendant, but rather a series of individual transmissions under individual circumstances." *Id.* at 404.

■ Although *Forman* is not controlling authority, rule 42 of the Texas Rules of Civil Procedure is patterned after rule 23 of the Federal Rules of Civil Procedure;

thus, federal decisions and authorities interpreting current federal class action requirements provide persuasive authority. *Bernal,* 22 S.W.3d at 433. We agree with the conclusion in *Forman* that the issue of permission will be the object of most litigants' efforts and, thus, the individual, and not common, issues predominate in this case. *See Forman,* 164 F.R.D. at 404; *see also Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1169 n. 6 (S.D.Ind.1997); *Livingston v. U.S. Bank, N.A.,* 58 P.3d 1088, 1090–91 (Colo.Ct.App.2002).

In reaching the same conclusion as *Forman,* we assume-favorably to Kondos and in accord with *Forman*—that express permission is required to send a fax advertisement without violating the TCPA and that implied permission is not relevant under the TCPA. However, we need not reach this issue, and do not express any opinion that this proposition is correct.[9]

Because the trial court incorrectly concluded that "questions of law or fact common to the class would predominate over questions affecting only individual members," *see* Tex.R. Civ. P. 42(b)(4), we conclude the trial court abused its discretion by certifying a class without performing a "rigorous analysis" on whether all prerequisites to certification have been met. *See Bernal,* 22 S.W.3d at 435. We resolve Lincoln's cross-point in its favor. *See Stromboe,* 102 S.W.3d at 694. Thus, we do not address the remainder of Lincoln's arguments in support of its cross-point. *See* Tex.R.App. P. 47.1 [10]

9. We note that if implied permission is sufficient under the TCPA (as Lincoln argues), and thus evidence of an EBR is relevant, the permission issue would occupy an even greater portion of the litigants' efforts, and further militate against the trial court's finding regarding the predominance of common issues.

10. We note Lincoln also asserts that Kondos was not a proper class representative, and

thus the trial court erred in certifying the class, because she only received fax advertisements regarding one property, and thus lacked individual standing to prosecute claims regarding the other fax advertisements. Standing is an element of subject-matter jurisdiction. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 553–54 (Tex. 2000). Thus we would ordinarily address standing issues first.

## SUMMARY JUDGMENT

■ Because the trial court erred in certifying the class, there is not a class that can be bound by the trial court's summary judgment. Lincoln asks us to affirm the summary judgment as to the named representatives in their individual capacity. This we decline to do for several reasons, the chief of which is the novel procedural posture of the case at the time the trial court granted summary judgment.

The trial court made two rulings on the merits of the case before giving notice to the class. First, in its July 12, 2001 order on class certification, it held in favor of Kondos that implied consent or the existence of an EBR was irrelevant to whether Lincoln violated the TCPA. Secondly, the trial court heard and decided motions for summary judgment and entered a final judgment in favor of Lincoln based on its ruling that Lincoln had not used a device to send an unsolicited advertisement and that it was not liable for damages resulting from ABF's transmission of fax advertisements. It decided these summary judgment motions in clear violation of section 51.014(b) of the civil practice and remedies code, without any objection of the parties, and based on motions filed by the parties while the interlocutory appeal of the class certification was pending.

■ The requirements for class notice set forth in rule 42(c)(2) and (3) make clear that notice is to be given to the class prior to a determination on the merits. *See Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 360–63 (Tex.2001) (Owen, J. dissenting); *see also Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 548, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (federal class action rule amended to avoid "one-way" intervention issue arising when class members were not identified before court made decisions going to merits of claim). Although the majority in *Bally* held the issue was premature for determination on interlocutory appeal, *Bally*, 53 S.W.3d at 358–59, the analysis and cases set forth in the dissent make clear that rule 42 also envisions that notice will be given to the class, and class members given an opportunity to opt-out, before the trial court addresses the merits of the class claims. *Id.* at 360–63 (Owen, J. dissenting). Failing to do so results in the court not giving the class members the notice required by rule 42(c)(2) and envisioned by rule 42(c)(3).

Secondly, and in part based on the procedural posture of the case at the time summary judgment was entered, we conclude the plaintiffs should be allowed to decide whether to attempt to re-certify a class on remand or to pursue their claims individually. *Cf. Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 352–53, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (class members may rely on pending class action to protect their rights, and so forgo individual suits). We will not presume plaintiffs would have proceeded in the same manner with the summary judgment motion had the trial court not certified the

---

However, Lincoln does not attack Kondos's standing to assert all her claims. In light of our conclusion, explained *infra*, that the case should be remanded, even an affirmative ruling on Lincoln's standing argument would not dispose of the entire case. The trial court would still have jurisdiction to hear Kondos's remaining claims (at least absent another, successful, challenge to the trial court's jurisdiction).

Because we are vacating the class certification order on the grounds set forth above, because the trial court will have jurisdiction over at least part of Kondos's claims, and because it is unclear whether Kondos will again seek certification or whether the trial court will certify another class, we decline to reach and decide Lincoln's standing arguments here.

class. We conclude the entire case should be remanded for further proceedings.

██ Lastly, the supreme court has held that appellate courts have broad discretion to remand in the interest of justice. *Scott v. Liebman*, 404 S.W.2d 288, 294 (Tex.1966). As long as there is a probability a case has for any reason not been fully developed, an appellate court has the discretion to remand rather than render a decision. *Zion Missionary Baptist Church v. Pearson*, 695 S.W.2d 609, 613 (Tex.App.-Dallas 1985, writ ref'd n.r.e.). The trial court improperly certified the class without vigorously analyzing rule 42's prerequisites, and again because of the unusual procedural posture of the case at the time summary judgment was entered, we hesitate to conclude that the case has been fully developed. Thus, we decline to render a decision on Kondos's ten issues asserting that the trial court erred by granting summary judgment in favor of Lincoln. *Cf., e.g., Hardy v. Wise*, 92 S.W.3d 650, 654 (Tex.App.-Beaumont 2002, no pet.) (remanding case without deciding merits of judgment after appellate court concluded trial court improperly certified plaintiff's and defendant's class and because trial court denied absent class members due process). In the interest of justice and to allow the trial court to fulfill its duty to protect the absent class members, we reverse the trial court's judgment, vacate in its entirety the trial court's July 12, 2001 interlocutory order that, *inter alia,* certified a class in this case, and remand this case for further proceedings.