Blitz v. Xpress Image, Inc., 2006 NCBC 10.

STATE OF NORTH CAROLINA         IN THE GENERAL COURT OF JUSTICE
                                      SUPERIOR COURT DIVISION
DURHAM COUNTY                            05 CVS 679

| | |
|---|---|
| JONATHAN BLITZ, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | |
| XPRESS IMAGE, INC., ) ) | **AMENDED ORDER** |
| Defendant. ) ) | |

*Randolph M. James, P.C. by Randolph M. James; The Law Firm of Michael T. George by Michael T. George; The Margulis Law Group by Max G. Margulis for Plaintiff Jonathan Blitz, on behalf of himself and all others similarly situated.*

*Cranfill, Sumner & Hartzog, LLP by Houston Foppiano for Defendant Xpress Image, Inc.*

Diaz, Judge.

{1} The Court heard this matter on 31 May 2006, on the Motion of Plaintiff Jonathan Blitz ("Blitz") for Class Certification pursuant to Rule 23 of the North Carolina Rules of Civil Procedure. For the reasons set forth below, and after considering the Court file, the written Motion, and counsel's memoranda and oral arguments, the Court **DENIES** the Motion on the grounds that: (a) issues individual to each purported class member predominate over common issues; and (b) a class action is not the superior method for resolving the alleged claims.

## I.

### PROCEDURAL BACKGROUND

{2} Blitz filed his Class Action Complaint ("Complaint") on 11 February 2005, in Durham County Superior Court. The case was transferred to the North Carolina Business Court and assigned to me as an exceptional matter by order of the Chief Justice of the North Carolina Supreme Court dated 3 October 2005.

{3} On 4 November 2005, this Court entered a Scheduling Order requiring that all discovery in this matter be completed by 30 December 2005 and setting deadlines for the filing of briefs on the issue of class certification.

{4}   The parties proceeded with two rounds of discovery. On 29 December 2005, one day before the discovery deadline, Blitz filed a Motion to Compel Discovery ("Motion to Compel"), seeking to compel the Defendant Xpress Image, Inc. ("Xpress Image") to respond to certain discovery requests contained in Plaintiff's Second Set of Interrogatories and Request for Production of Documents filed 18 October 2005.

{5}   On 24 January 2006, this Court entered an Order granting Plaintiff's Motion for Extension of Time, which extended the deadline for completion of discovery until 15 February 2006, so that the Motion to Compel could be heard by the Court. The Motion to Compel was scheduled for hearing by telephone on 10 February 2006. Counsel for Xpress Image filed a Response to the Motion to Compel on 7 February 2006.

{6}   During the telephone hearing on 10 February 2006, Blitz's counsel withdrew the Motion to Compel and advised the Court that he would be seeking to further extend the discovery deadline and amend the Complaint to re-define the proposed class. The Court instructed counsel to (a) file a motion showing good cause for extending discovery beyond the 15 February 2006 deadline and (b) seek such relief before the expiration of the deadline. Plaintiff's counsel failed to do either, and on 22 February 2006, Xpress Image filed a motion seeking to close discovery and proceed to a determination of class certification.

{7}   On 27 February 2006, the Court entered an order providing that discovery in this case was deemed closed as of 15 February 2006 and setting new deadlines for the filing of briefs on the issue of class certification.

{8}   On 17 March 2006, the parties filed their Motions and Memoranda of Law Supporting and Opposing Class Certification. On 3 April 2006, the Defendant filed its Motion to Strike[1] and Response to Plaintiff's Motion for Class Certification. On 4 April 2006, Blitz filed his Response Memorandum in Support of the Motion for Class Certification.

{9}   On 6 April 2006, Blitz filed a Motion to Re-Open Discovery, proposing a third round of Interrogatories, Request for Admissions, and a Rule 30(b)(6) deposition of Defendant's corporate representative. On 7 April 2006, Defendant filed a Response.

{10}   On 25 April 2006, this Court entered an Order denying the Motion to Re-Open Discovery for Plaintiff's failure to demonstrate good cause for the requested relief.

{11}   On 31 May 2006, this Court heard oral arguments on the Motion for Class Certification.

II.

FACTUAL BACKGROUND

A.

## THE PARTIES

{12} Plaintiff Jonathan Blitz is a citizen and resident of Durham County, North Carolina. (Compl. ¶ 1.)

{13} Defendant Xpress Image is a small business organized under the laws of the State of North Carolina as a corporate entity and doing business in North Carolina with its principal place of business in Mebane. (Compl. ¶ 2.) Xpress Image produces apparel and other promotional merchandise with corporate logos. (Compl. ¶ 4.)

### B.

### OVERVIEW OF THE FACTS

{14} This action arises out of alleged violations of the Federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.S. § 227 (2006), which, *inter alia*, prohibits the transmission of "unsolicited advertisements" to fax machines. Specifically, Blitz seeks certification on behalf of a class alleging that Xpress Image violated the TCPA when its agent faxed thousands of single-page unsolicited advertisements regarding Defendant's services to residents and businesses in the 919 and 336 area codes. Pursuant to the TCPA, Plaintiff seeks $500.00 in statutory damages for each member of the putative class, statutory treble damages based on allegations that the violations were willful or knowing, and injunctive relief. (Compl. Prayer for Relief ¶¶ 2-3.).

{15} Plaintiff's Motion for Class Certification defines the proposed class[2] as:

> All persons and other entities to whom Defendant sent or caused to be sent, one or more facsimile advertisements transmissions promoting sweatshirts and embroidery services of Defendant from April 4, 2001 until July 9, 2005 inclusive.

(Pl.'s Mot. for Class Certification at p. 4.)

{16} In December 2004, Xpress Image entered into a contract with Five-Star Fax ("Five-Star"), whereby Five-Star would transmit facsimiles advertising Xpress Image's services to facsimile numbers provided by Xpress Image. (Cranford Aff. ¶ 3, Mar. 16, 2006.)

{17} All of the facsimile numbers that Xpress Image supplied to Five-Star were within the 919 and 336 area codes—the area in which Xpress Image does business. (Cranford Aff. ¶ 4, Mar. 16, 2006; Cranford Aff. ¶ 3, Apr. 4, 2006.) According to the Defendant's un-rebutted affidavit, "[t]he list included some existing customers of Xpress Image, fellow members of the Durham Chamber of Commerce, and others in the area in which Xpress Image does business." (Cranford Aff. ¶ 4, Mar. 16, 2006.)

{18} Xpress Image was, at all relevant times, a member of the Durham Chamber of Commerce. (Cranford Aff. ¶ 2, Mar. 16, 2006.)

{19} Xpress Image obtained the facsimile numbers for the members of the Durham Chamber of

Commerce from the Chamber's directory, which lists a facsimile number as part of each member's contact information. (Cranford Aff. ¶ 4, Mar. 16, 2006.)

{20} Given that all of the facsimile advertisements were sent to individuals and businesses in the area where Xpress Image does business, it is likely that some members of the purported class are either customers of the Defendant or parties who (whether as a result of individual initiative or perhaps as a result of their Chamber affiliation) have made at least one inquiry regarding the Defendant's services.

{21} On 1 February 2005, Five-Star sent out 4,809[3] one-page advertisements[4] to the facsimile numbers provided by Xpress Image; Blitz received one of these advertisements. (Cranford Aff. ¶ 5, Mar. 16, 2006.) The facsimile number to which Xpress Image sent the advertisement received by Blitz was a number Xpress Image obtained from the Durham Chamber of Commerce membership directory, which listed the number as belonging to the Landwright Corporation. (Cranford Aff. ¶ 5, Mar. 16, 2006.)

{22} Xpress Image presented no evidence that it sought or received "prior express permission or invitation" from any of the recipients to send the facsimile advertisements.

### III.

### CONCLUSIONS OF LAW

### A.

### CLASS CERTIFICATION

{23} In North Carolina, class actions are governed by Rule 23 of the North Carolina Rules of Civil Procedure ("Rule 23"). Rule 23(a) provides:

> If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued.

N.C.G.S. § 1A-1, Rule 23(a) (2005).

{24} "The party seeking to bring a class action under Rule 23(a) has the burden of showing that the prerequisites to utilizing the class action procedure are present." *Crow v. Citicorp Acceptance Co., Inc.*, 319 N.C. 274, 282, 354 S.E.2d 459, 465 (1987).

{25} The requirements for class action certification are: (1) the existence of a class; (2) the class members within the jurisdiction of the court must adequately represent any class members outside the jurisdiction of the Court; (3) the class must be so numerous as to make it impracticable to bring each member before the court; (4) more than one issue of law or fact common to the class should be present; (5) the party representing the class must fairly insure the representation of all class members; and (6) adequate notice must be given to the class members. *Id.* at 282-84, 354 S.E.2d at 465-66.

{26}   "Where all the prerequisites are met, it is within the trial court's discretion to determine whether 'a class action is superior to other available methods for the adjudication of th[e] controversy.'" *Harrison v. Wal-Mart Stores, Inc.*, 170 N.C. App. 545, 548, 613 S.E.2d 322, 326 (2005) (quoting *Crow*, 319 N.C. at 284, 354 S.E.2d at 466).  Further, "'the trial court has broad discretion in [deciding whether a class action should be certified] and is not limited to consideration of matters expressly set forth in Rule 23 or in' case law." *Harrison*, 170 N.C. App. at 548 n.2, 613 S.E.2d at 326 n.2 (quoting *Crow*, 319 N.C. at 284, 354 S.E.2d at 466).

{27}   This case turns on the first requirement of class actions—the existence of a class.[5]  "[A] 'class' exists under Rule 23 when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members." *Crow*, 319 N.C. at 280, 354 S.E.2d at 464.

{28}   To determine whether common issues predominate over issues affecting only individual class members, the Court does not simply line up the number of common issues against those that require individual consideration.  Rather, the test is whether the individual issues are such that they will predominate over common ones in terms of being the focus of the litigants' efforts.  *See Harrison*, 170 N.C. App. at 550-53, 613 S.E.2d at 327-28.  *See also Kondos v. Lincoln Prop. Co.*, 110 S.W.3d 716, 721 (Tx. Ct. App. 2003) (observing the same in the TCPA context).  For the reasons set forth in this Order, I find that at least two such individual issues will predominate here.

**B.**

**1.**

**THE TCPA**

{29}   In 1991, Congress enacted the TCPA, which, prohibits, *inter alia*,[6] the use of "any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine[.]"  47 U.S.C.S. § 227(b)(1)(C).

{30}   The TCPA only prohibits "unsolicited" advertising.  An "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission."  47 U.S.C.S. § 227(a)(5).  "This invitation or permission can be given orally or in writing." *Carnett's, Inc. v. Hammond*, 279 Ga. 125, 127, 610 S.E.2d 529, 531 (2005).  *See also Livingston v. U.S. Bank, N.A.*, 58 P.3d 1088, 1091 (Col. Ct. App. 2002) (noting that "the TCPA does not require consent to be given in writing, and it may be given orally").

{31}   The TCPA creates a private right of action against a sender of an unsolicited advertisement and provides that, for each violation, a person is entitled to $500.00 or actual damages, whichever is greater, as well as treble damages if a court finds the violation to be "willful" or "knowing."  47 U.S.C.S. § 227(b)(3).  The TCPA also allows a party to seek injunctive relief.  47 U.S.C.S. § 227(b)(3)(A).

## 2.
## THE "ESTABLISHED BUSINESS RELATIONSHIP" EXCEPTION

{32}   As originally enacted, the TCPA established an exception for automated telephone solicitations made to "any person with whom the caller has an established business relationship."  47 U.S.C.S. § 227(a)(4).  Pursuant to 47 U.S.C.S. § 227(b)(2), which authorizes the Federal Communications Commission ("FCC") to issue regulations interpreting the TCPA, the FCC defined an "established business relationship" as:

> [A] prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration . . . which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(4) (2006).

{33}   In a subsequent order interpreting the TCPA, the FCC determined that the "established business relationship" exception also applied to the provisions prohibiting unsolicited facsimile advertisements.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 8752, 8779 n.87 (Oct. 16, 1992) (stating that "facsimile transmission from persons or entities who have an established business relationship with the recipient can be deemed to be invited or permitted by the recipient").  "In issuing this interpretation, the FCC cited the legislative history of the TCPA, concluding that 'a solicitation to someone with whom a prior business relationship exists does not adversely affect subscriber privacy interests,' and that the TCPA was not intended to 'unduly interfere with ongoing business relationships.'"  *Weitzner v. Iridex Corp.,* 2006 U.S. Dist. LEXIS 44317, slip op. at 9 (S.D.N.Y. June 29, 2006) (quoting 7 F.C.C.R. at 8770).

{34}   In 2003, the FCC drafted regulations that "reverse[d its] prior conclusion that an established business relationship provides companies with the necessary express permission to send faxes to their customers," requiring instead that consent to receive facsimile advertisements be evidenced by a signed writing to that effect.  *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("Rules and Regs."),* 68 Fed. Reg. 44144, 44167-68 (July 25, 2003).

{35}   The FCC delayed the effective date of its rule change on several occasions, first until 1 January 2005, then until 30 June 2005, and finally until 9 January 2006.  *See Rules and Regs.*, 70 Fed. Reg. 37705

(June 30, 2005).  Each time the FCC extended the effective date of the new rule, it issued a statement providing that until the new rule became effective, an established business relationship would continue to be sufficient to show that an individual or business had given express permission to receive facsimile advertisements.  *See, e.g., Rules and Regs.*, 69 Fed. Reg. 62816 (Oct. 28, 2004) ("We emphasize that our existing TCPA rules prohibiting the transmission of unsolicited advertisements to a telephone facsimile machine will remain in effect during the pendency of this extension.  Under these rules, those transmitting facsimile advertisements must have an established business relationship or prior express permission from the facsimile recipient to comply with our rules."); *see also Rules and Regs.*, 70 Fed. Reg. at 37705-06; *Rules and Regs.*, 68 Fed. Reg. 50978, 50979 (Aug. 25, 2003).

{36}   Before the FCC's rule change became effective, Congress enacted the Junk Fax Prevention Act of 2005 ("JFPA"), 47 U.S.C.S. § 227(b)(1)(C), which prevented the FCC's implementation of the proposed change.  The JFPA, signed into law by the President on 9 July 2005, amended the  TCPA to codify the "established business relationship" exception to TCPA liability in the facsimile context.  47 U.S.C.S. § 227(b)(1)(C)(i).  Although this provision of the JFPA does not apply to the present case, it provides support for the Court's position that Congress always intended for the "established business relationship" exception to apply to facsimile advertisements.

## C.

## CLASS CERTIFICATION UNDER THE TCPA

{37}   While it does not appear that North Carolina courts have addressed the issue of class certification under the TCPA, cases from other jurisdictions provide ample guidance.

{38}   As Blitz correctly notes, there are a number of issues that are common to the putative class.  (*See* Memo. in Supp. of Pl.'s Mot. for Class Certification at pp. 1-2).  But there are also at least two issues in this case that require individualized consideration of each putative class member's circumstances, and I conclude that these issues will predominate over the common issues identified by the Plaintiff.[7]   These are: (1) whether any purported class member gave Defendant "express permission" to send the advertisement; and (2) whether any purported class member had an "established business relationship" with Xpress Image.

## 1.

## "EXPRESS INVITATION OR PERMISSION"

{39}   Several courts addressing class certification under the TCPA—without reaching the "established business relationship" exception—have concluded that individual inquiries regarding whether recipients

gave permission to receive facsimiles necessarily defeated class certification under the TCPA. *See Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169-70 (S.D. Ind. 1997); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403-04 (E.D. Pa. 1995); *Livingston v. U.S. Bank, N.A.*, 58 P.3d 1088, 1090-91 (Colo. Ct. App. 2002), *Kondos v. Lincoln*

*Prop. Co.*, 110 S.W.3d 716, 721-22, (Tex. Ct. App. 2003). I find the reasoning of these decisions persuasive.[8]

{40}    As noted earlier, Xpress Image's opposition papers do not assert that it obtained express permission from any of the fax recipients. However, as to "express invitation or permission," the current evidentiary gap is not dispositive, as this issue is part of each individual plaintiff's burden. *See Forman*, 164 F.R.D. at 404; *Kim v. Sussman*, 2004 WL 3135348, at *2 (Ill. Cir. 2004) (noting that each individual class member has the "burden to demonstrate that the transmission in question was unsolicited").[9]

{41}    Moreover, invitation or permission to receive a facsimile advertisement can be given *orally* under the TCPA. *Carnett's*, 279 Ga. at 127, 610 S.E.2d at 531; *Livingston*, 58 P.3d at 1091. The Colorado Court of Appeals in *Livingston v. U.S. Bank, N.A.* focused on this fact in concluding that the determination of the question of "express invitation or permission" would require an individualized inquiry at the class-member level. *See Livingston*, 58 P.3d at 1091. Specifically, the court there held:

> Here, the trial court observed that determination whether a recipient had given "prior express invitation or permission" involves an inquiry at the class-member level. Because the TCPA does not require consent to be given in writing, and it may be given orally, determination of this issue would involve examining whether each potential class member had invited or given permission for the transmission of the fax. Thus, as the trial court noted, the
>
> absence of written documents in defendant's files would not establish the issue of consent.

*Id.*

{42}    *Kondos v. Lincoln Property, Inc.*, 110 S.W.3d 716 (Tex. Ct. App. 2003), is another case involving class certification under the TCPA that provides support for denying certification here. In reversing the trial court's certification order in *Kondos*, the Texas Court of Appeals concluded that "even if only a relatively small number of the class members gave express permission to receive the faxes in question, either a jury or the trial court . . . must still ascertain whether each class member gave or did not give express permission to receive the faxes in question." 110 S.W.3d at 721. As to this question, the court found that "[t]he individualized issues of whether each of the 63,760 class members gave or did not give

express permission is not likely to be a 'relatively easy' task for a single jury or the trial court to resolve, and clearly 'will be the object of most of the litigants' efforts.'" *Id.* (citations omitted).

{43}   Similarly, the fact that the record before me is currently devoid of evidence of permission (or, alternatively, that only a small percentage of recipients may have given permission) is not dispositive, as the Court would still be required to conduct an individualized inquiry of each purported class member to determine whether each class member gave "prior express invitation or permission."

{44}   Federal courts have also addressed class certification under the TCPA. *See Kenro, Inc.*, 962 F. Supp. 1162 (S.D. Ind. 1997); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D. Pa. 1995). According to the court in *Forman,* "the essential question of fact that each potential plaintiff must prove [in a TCPA action] is whether a specific transmission to its [facsimile] machine was without express invitation or permission on its part." *Forman*, 164 F.R.D. at 404. Thus, the "gravamen of [a] plaintiff's complaint is not a common course of conduct by [a] defendant, but rather a series of individual transmissions under individual circumstances." *Id.* Because each plaintiff has the burden to prove that a facsimile advertisement was transmitted without his or her "express invitation or permission," the *Forman* court held that the individual issue of permission predominated over the common issues and denied certification. *See id.* at 404-05.

{45}   Unlike the plaintiffs in *Kenro*, *Forman*, and *Kondos*, Blitz has studiously avoided any reference to "express permission" in his proposed class definition. Regardless of how the class is defined, however, the question a court must always address at the certification stage is whether individual issues regarding the putative class members will predominate over common ones with regard to the focus of the litigants' efforts. *See Harrison*, 170 N.C. App. at 550-53, 613 S.E.2d at 327-28; *Kondos*, 110 S.W.3d at 721.

{46}   Here, there is no avoiding an individualized inquiry into the facts and circumstances of each recipient's "invitation and permission" should this matter proceed as a class action, and this is so regardless of what the evidence now tends to show on the issue. Accordingly, I find this to be a sufficient basis to deny class certification.

## 2.
## "ESTABLISHED BUSINESS RELATIONSHIP"

{47}   Even if Blitz could overcome this initial hurdle to class certification, a jury would also need to conduct a separate individualized inquiry to determine whether consent was implied—and TCPA liability thus precluded—because of an "established business relationship."

{48}   Blitz contends that the "established business relationship" exception does not apply to facsimile advertisements because it is contrary to the clear language of the TCPA. (Resp. Mem. in Supp. of Pl.'s

Mot. for Class Certification at pp. 7-10.)  The Court acknowledges that a number of other courts have reached that conclusion.  *See Iridex,* 2006 U.S. Dist. LEXIS 44317, slip op. at 10 (cataloging cases).

Right or wrong, however, the FCC has issued regulations and interpretive rulings[10] providing that the "established business relationship" exception applies to facsimile advertisements, and this state Court is bound to accept these as valid.  *See Carnett's*, 279 Ga. at 128, 610 S.E.2d at 531 (stating that state courts must accept the FCC regulations establishing the existence of the "established business relationship" exception as valid); *Consol. Tel. Coop. v. W. Wireless Corp.*, 637 N.W.2d 699, 707 (N.D. 2001) ("Unless the FCC's rulings and regulations have been appropriately challenged in the proper federal forum, we are not at liberty to review the FCC's statutory interpretation even if we doubted its soundness, and we must apply the rulings and regulations as written.").  Accordingly, the Court recognizes the statutory exception for an "established business relationship" for facsimile advertisements.

{49}  Plaintiff also argues that the "established business relationship" exception is a defense and the Court is "proscribed from considering *defenses* raised by a defendant in adjudicating a motion for class certification."  (Mem. in Supp. of Pl.'s Mot. for Class Certification at p. 2 n.2.)  Even assuming that Plaintiff's view of who bears the evidentiary burden is correct, however,[11] the Court may still consider the issue on the question of class certification.  *See, e.g.*, *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000) ("[A]ffirmative defenses should be considered in making class certification decisions."); *Vengurlekar v. Silverline Technologies, Ltd.,* 220 F.R.D. 222, 226 (S.D.N.Y. 2003).  *See also Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) ("[W]hen the defendant's affirmative defenses . . . may depend on facts peculiar to each plaintiff's case, class certification is erroneous.") (internal quotation marks and citation omitted).  *See also Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996) (explaining that "a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues").  *But see Pitts v. Am. Sec. Ins. Co.*, 144 N.C. App. 1, 12, 550 S.E.2d 179, 188 (2001), *aff'd per curiam by an equally divided court*, 356 N.C. 292, 569 S.E.2d 647 (2002) (stating that it was error for the trial court to consider affirmative defenses in certification question, as "defense to claims asserted by some members of the proposed class relates to the merits of individual plaintiff's claims and should not be considered at the certification stage of the proceedings").[12]

{50}  Furthermore, the fact that Xpress Image did not allege the "established business relationship" exception as an affirmative defense is of no legal significance.  Xpress Image has placed this matter

squarely in issue, and Blitz can hardly claim surprise, particularly since the discovery that he sought to compel on 29 December 2005 (only to later withdraw his motion) was targeted at this very question. Under these circumstances, the Court would (consistent with the liberal leave mandate of Rule 15(a) of the North Carolina Rules of Civil Procedure) likely grant Xpress Image leave to amend its answer to correct this omission.

{51} Having concluded that the "established business relationship" exemption exists and that the Court may consider it in ruling on the Motion for Class Certification, I must now determine whether it precludes certification under the facts of this case.

{52} As previously noted, "a 'class' exists under Rule 23 when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members." *Crow*, 319 N.C. at 280, 354 S.E.2d at 464.

{53} The Georgia Supreme Court recently held in *Carnett's, Inc. v. Hammond*, 279 Ga. 125, 610 S.E.2d 529 (2005), under facts analogous to those here, that the "established business relationship" exception precluded the existence of a class under the TCPA.

{54} In *Carnett's*, the defendant sent more than 70,000 facsimiles advertising its car wash services to residents in the Atlanta area where it did business.

{55} The Georgia Supreme Court, in determining whether the "established business relationship" exception was sufficient to defeat commonality under the facts of that case, discussed the parameters of the exception. *Carnett's*, 279 Ga. at 128, 610 S.E.2d at 531-32. Specifically, the court noted:

> The FCC has opined that the established business relationship exemption is broad and that you have an established business relationship with a person or entity if you have made an inquiry, application, purchase, or transaction regarding products or services offered by such person or entity. While we need not determine the precise parameters of this exemption, the definition of an established business relationship in the FCC rules, as well as the above-cited FCC pronouncements, suggest that even one car wash at Carnett's would likely suffice.

*Id.* (internal quotation marks and citations omitted).

{56} Moreover, although the facsimiles in *Carnett's* were not specifically targeted to existing customers, the fact that they were sent to residents in the area where the defendant did business made it likely that some of the recipients had an established business relationship with the defendant. *See Id.* at 129, 610 S.E.2d at 532. Because these individuals were not excluded from the proposed class, the Georgia Supreme Court held that plaintiff "failed to prove that the class members were similarly situated in that they all received 'unsolicited' faxes." *Id.*

{57} The Georgia Supreme Court also rejected the lower court's view that the "predominant *question*

[of solicitation] is common to all the class members and thus supports, rather than undermines, a finding of commonality." *Id.* Instead, the Georgia Supreme Court emphasized that "a common question is not enough when the *answer* may vary with each class member and is determinative of whether the member is properly part of the class." *Id.* The court also rejected the defendant's argument (an argument also made here) that addressing the issue of solicitation at the class certification stage was inappropriate, stating that "the question of solicitation is both a merits question and a class question." *Id.* Accordingly, the court found that the trial court acted within its discretion in answering this question and denying class certification on the basis that a determination of the solicitation requirement would necessitate an individualized inquiry. *Id.*

{58} In the present case, it is undisputed that the 1 February 2005 facsimile advertisements were directed to residences and businesses located within the 919 and 336 area codes in which Xpress Image does business. Thus, it is likely that at least some of the recipients had an established business relationship with the Defendant. Moreover, in the present case, the Defendant's un-rebutted affidavit avers that at least some of the members of the purported class are customers of Xpress Image.

{59} In addition, as is the Defendant, some of the members of the purported class are members of the Durham Chamber of Commerce. While the Court is not willing to go as far as Xpress Image would suggest—i.e., that mere inclusion of a fax number in the Chamber directory is enough to establish an "established business relationship"—it would still have to determine who among the class are the Defendant's prior customers and who, among the class, may have visited Defendant's business or made an inquiry regarding Defendant's services by telephone, the internet, or otherwise (even if the visit or inquiry did not result in a sale or purchase), as those putative plaintiffs arguably fall within the "established business relationship" exception.

{60} Because this analysis, which is personal to each plaintiff, will also be the likely object of most of the litigants' efforts, it provides an additional basis for denying class certification.

## D.

## THE TCPA'S STATUTORY REMEDY

{61} Finally, the TCPA provides a statutory penalty of $500.00 for each unsolicited facsimile advertisement (which can be trebled for "willful" or "knowing" violations). There appears to be no bar to pursuing such a remedy in small claims court, where attorneys are not required. *See* 47 U.S.C.S. § 227(b)(3); N.C.G.S. § 7A-210 (2005) (establishing $5,000 jurisdictional limit for small claims actions).[13] Additionally, Blitz presented no evidence that such a forum has proven inadequate in North Carolina as a

vehicle for obtaining individual relief under the TCPA.[14]

{62}    In light of this reasonably available and relatively convenient alternative forum, and because proceeding via a class action would require a series of mini-trials as to the issues of "express permission" and an "established business relationship" for an indeterminate number of the 4000+ plaintiffs sought to be joined in this lawsuit, I find (in the exercise of my substantial discretion) that a class action is neither a feasible nor a superior method for resolving the claims.  *See Forman*, 164 F.R.D. at 405 (finding that "[a] class action would be inconsistent with the specific and personal remedy provided by Congress to address the minor nuisance of unsolicited facsimile advertisements"); *Kim*, 2004 WL 3135348, at *2 (holding that regardless of whether plaintiff could satisfy the Rule 23 prerequisites for certification, a class action was not the appropriate method for the 'fair and efficient' adjudication of a TCPA violation).

## CONCLUSION

{63}    Based upon the foregoing, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that Plaintiff's Motion for Class Certification is **DENIED**.

This the 23rd day of August, 2006.

---

[1] Plaintiff's Motion for Class Certification is supported by the affidavit of a Mr. Robert Biggerstaff. Defendant seeks to strike this affidavit on the grounds that: (a) Blitz failed to designate Biggerstaff as an expert; and (b) Biggerstaff's affidavit is replete with incompetent legal opinions.  The Court **DENIES** the Motion to Strike, but I will not consider those portions of the Biggerstaff affidavit that set out mere legal conclusions regarding the issues before me.

[2] Blitz defines his proposed class in a manner different from that originally pled in his Complaint. Although Defendant objects to the purported amendment, the Court overrules the objection and elects to consider the newly defined class.

[3] Defendant's records show that 3,059 facsimiles were successfully received. (Pl.'s Mot. for Class Certification, Exhibit B.)

[4] A copy of the one-page facsimile advertisement is attached to the Complaint as Exhibit A.

[5] Because the Court finds that this case turns on the existence of a class, I have not addressed the other prerequisites to certification.  For the purposes of this ruling, the Court assumes that the Plaintiff has met his burden as to numerosity, and that there exist some common questions of law or fact.  The Court also assumes (without deciding) that the Plaintiff would be an adequate class representative and notice could be provided to the putative class members.

[6] Although not at issue in this case, the TCPA also prohibits marketers from placing unsolicited automated telephone calls to residential subscribers. 47 U.S.C.S. § 227(b)(1)(B).

[7] For the most part, the common issues that Blitz identifies in his moving papers (*see* Resp. Mem. in Supp. of Pl.'s Mot. for Class Certification at pp. 1-2) are questions of law, many of which other courts have addressed previously.  Accordingly, these issues should not require extensive effort to resolve.

[8] As Blitz correctly notes, other courts have reached a contrary result. I have reviewed the cases relied on by the Plaintiff in his briefs.  As the question before me appears to be one of first impression in North Carolina, I must attempt to predict how our appellate courts would resolve the issue.  I conclude that the opinions cited in ¶ 39 of this Order are better reasoned because they properly account for the difficulty in defining the parameters of a proper and manageable class for claims arising under the TCPA.

[9] Other courts have concluded that a defendant has the burden of proof on this issue. *See Jemiola v. XYZ Corp.,* 802 N.E.2d 745, 749 (Ohio Ct. C.P. 2003).  While I disagree with the analysis in *Jemiola*, whether the issue is denominated an element of the claim

or an affirmative defense is (for reasons I discuss later in this Order) immaterial on the question of class certification.  The point remains that if a class is certified, this Court will need to make individual determinations as to whether a recipient gave permission to receive the facsimile advertisements.

[10] *See* Part B.2.of this Order (discussing the history of the "established business relationship" exception).

[11] *Cf. Carnett's,* 279 Ga. at 129, 610 S.E.2d at 532 n.24 (stating that it is plaintiff's burden to prove that a fax was unsolicited for purposes of showing a TCPA violation).

[12] Because *Pitts* was affirmed by equally divided Supreme Court, it stands without precedential value. After considering the analysis in *Pitts,* the Court declines to adopt its conclusion as to the scope of trial court's consideration in making class certification decisions.

[13] In discussing the efficacy of the TCPA statutory remedy during debate on the proposed legislation, Senator Ernest "Fritz" Hollings of South Carolina noted:  "Small claims court or a similar court would allow the consumer to appear before the court without an attorney.  The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer." 137 Cong. Rec. S16205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings).

[14] Plaintiff's Complaint also sought injunctive relief, a remedy explicitly authorized under the TCPA, *see* 47 U.S.C.S. § 227(b)(3)(A), and not available in small claims court.  Other than the facsimiles allegedly transmitted on 1 February 2005, however (which form the basis for this class action Complaint), Blitz presented no evidence that the Defendant has committed other TCPA violations such that injunctive relief is necessary to grant complete relief.