**GENE & GENE, LLC,**

v.

**BIOPAY, LLC, et al.**

No. CIV.A. 05–121–JJB–DLD.

United States District Court, M.D. Louisiana.

Dec. 20, 2006.

Philip Bohrer, Bohrer Law Firm, Christopher K. Jones, John P. Wolff, III, Keogh, Cox & Wilson, Keith D. Jones, Baton Rouge, LA, for Gene & Gene, LLC.

David B. Sharpe, Scott Rodgers Wheaton, Jr., Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, Sidney W. Degan, III, Ralph Gerard Breaux, Degan, Blanchard & Nash, New Orleans, LA, Russell J. Gaspar, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, Andre' Collins Gaudin, Meredith M. Miceli, Burglass & Tankersley, L.L.C., Metairie, LA, for Biopay, LLC, et al.

### RULING ON MOTION FOR CLASS CERTIFICATION

BRADY, District Judge.

This matter is before the court on a motion for class certification filed by lead plaintiff, Gene and Gene, LLC (doc. 55). Defendants, Essex, Biopay, and Evanston have each filed memoranda in opposition to the plaintiff's motion to certify the class (docs. 68, 69, 70). The plaintiff filed a Supplemental Memorandum in Support of its Motion (doc. 88) as well as a Consolidated Reply to the defendants' arguments (doc. 91). Defendant Essex filed a Supplemental Memorandum in Opposition (doc. 95). Oral arguments were held on the Motion for Class Certification on December 11, 2006.

### Background Facts

The plaintiff, Gene and Gene, filed suit against defendant, Biopay, for allegedly violating the Telephone Consumer Protection Act ("TCPA") of 1991.[1] The TCPA prohibits the "use [of] any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). The TCPA creates a private right of action by which a litigant can: 1) seek to enjoin the violation; 2) pursue an action to recover for actual monetary loss from such a violation or receive $500 in damages for each such viola-

---

1. 47 U.S.C. § 227

tion, whichever is greater; or 3) pursue both such actions. *Id.* § 277(b)(3). If a court finds that a defendant acted willfully or knowingly in violation of the TCPA, the court is given the discretion to award treble damages. *Id.* Thus, each violation can result in a fine of up to $1500.

In this case, the plaintiff alleges that Biopay advertised its products by "fax blasting," an advertising strategy by which facsimiles are sent to numerous recipients at once. The plaintiff amended its complaint to add Essex Insurance Company and Evanston Insurance Company, alleging that Essex and Evanston provided insurance to Biopay which would cover the allegations set forth in the initial complaint (docs. 18, 40).

In its motion for class certification, the plaintiff seeks to define the class as:

> all recipients of unsolicited telefacsimile messages and/or advertisements within the State of Louisiana which were transmitted and/or initiated by or on behalf of BIOPAY, L.L.C., between the dates of January 21, 2001 and through the present; The named Class shall not include any recipients from whom the Defendant has received the prior express invitation or permission to receive the telefacsimile advertisements.

Doc. 58 (Plaintiff's Memorandum in Support of Motion for Class Certification, p. 3).

### Analysis

#### I. Overview of Rule 23

This court has substantial discretion in determining whether to certify a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.[2] Nevertheless, despite the discretionary nature of a class certification ruling, this court must conduct a rigorous analysis to ensure that the requirements of

Rule 23 have been met.[3] As movers for class certification, the plaintiffs bear the burden of proving that the elements of Rule 23 have been met.[4]

Rule 23(a) sets forth four threshold requirements that must be satisfied by the putative class before a case is certified as a class action. The plaintiff must establish that: 1) the class is so numerous that joinder of all members is impractical ("numerosity"); 2) questions of law or fact are common to the class ("commonality"); 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and 4) the plaintiff and its counsel will fairly and adequately protect the interest of the class ("adequacy of representation").

If these four prerequisites are met, the plaintiff must further satisfy one of the three categories listed in Rule 23(b). Under 23(b), the plaintiff must show that: 1) separate actions would result in inconsistent adjudications or the non-parties interests will be substantially impaired; 2) final injunctive or declaratory relief is appropriate to the class as a whole; or 3) common questions of law or fact predominate over any questions affecting only individual members and a class action is the superior method of fairly and efficiently adjudicating the controversy.

#### II. Rule 23(a)

##### A) Numerosity

■ Ordinarily, a plaintiff must "demonstrate some evidence or reasonable estimate of the number of purported class members."[5] Although numbers alone are not dispositive of the numerosity inquiry,[6] the Fifth Circuit has provided some guidance as to how many putative class members are necessary to fulfill the numerosity standard of Rule 23(a)(1).

---

2. *See James v. City of Dallas,* 254 F.3d 551, 562 (5th Cir.2001) (stating that a "district court maintains great discretion in certifying and managing a class action").

3. *Steering Comm. v. Exxon Mobil Corp.,* 461 F.3d 598, 601 (5th Cir.2006) (citing *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996)).

4. *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir.1981) (stating that the

"burden of proof is on the plaintiff who seeks to this certify his suit").

5. *James,* 254 F.3d at 570.

6. *Zeidman,* 651 F.2d at 1038 (explaining that the "proper focus ... is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors").

The Fifth Circuit has held that a class composed of 100 to 150 members will generally satisfy the numerosity requirement.[7]

In this case, the plaintiff seeks to certify a class compromised of all Louisiana recipients of Biopay's fax advertisements since 2001. The plaintiff alleges that the this would include 4,199 fax transmissions.[8] The log transmissions contain data indicating the name and contact information of the fax recipients. This court finds that the plaintiff has produced sufficient evidence to satisfy the numerosity requirement.

### B) Commonality

■ To meet the requirements of Rule 23(a)(2), a plaintiff must demonstrate that questions of law or fact are common to the class. In this case, the plaintiff alleges that because Biopay engaged in a common course of conduct in the transmission of unsolicited fax advertisements, the operative facts are the same for the proposed class.

Biopay asserts that the putative class cannot meet the commonality requirement because the court will have to conduct individual inquiries to determine which persons belong to the class. Biopay notes that a violation of the TCPA requires "unsolicited" faxes. It maintains that although the class representative may have received an unsolicited fax, this does not mean that every potential class member received an unsolicited fax. Biopay further argues that if an Established Business Relationship exists, it would further heighten the difficulty in determining which parties received unsolicited faxes.[9]

Defendant Essex has essentially made the same arguments as Biopay. Essex contends that genuine issues of fact exist as to whether or not the faxes sent by Biopay were unsolicited. Consequently, Essex maintains that individual inquiries will have to be made for each transmission.

The parties have well briefed the court on prior cases deciding TCPA class certification issues. In surveying the landscape of TCPA class certification litigation, this court has reviewed numerous cases deciding for and against class certification. For the vast majority of them, the bone of contention has been the element of commonality. While state cases have allowed class certification in TCPA claims,[10] federal courts have consistently denied class certification.[11]

However, the parties have not cited, nor was this court able to find a pronouncement from the Fifth Circuit nor any other federal court in Louisiana on the issue of TCPA class certification. Thus, there is no binding precedent on point. Rather than blindly following the rulings of other jurisdictions, this court has examined Fifth Circuit precedent in order to ascertain how a federal court within the Fifth Circuit should decide this matter.

This court finds *Forbush v. J.C. Penney, Co.*, 994 F.2d 1101 (5th Cir.1993) to be instructive. In *Forbush*, the plaintiff sued J.C. Penney after the company had denied her retirement benefits. *Id.* at 1103. The plaintiff attempted to certify a class composed of plaintiffs "whose pension benefits have been or will be reduced or eliminated as a result of the plan's overestimation of their Social Security benefits." *Id.* The defendant opposed the motion noting that the potential class would be composed of people with four dif-

---

7. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir.1999).

8. Doc. 88 (Plaintiff's Supplemental Memorandum in Support of Motion for Class Certification).

9. *See Accounting Outsourcing, LLC v. Verizon Wireless Personal Commc'n, L.P.*, 329 F.Supp.2d 789, 808 (M.D.La.2004) (discussing the Established Business Relationship).

10. *See, e.g., Lampkin v. GGH, Inc.*, 146 P.3d 847 (Okla.Civ.App.2006) (granting class certification in TCPA case); *Hooters of Augusta, Inc. v. Ni-*

cholson, 245 Ga.App. 363, 537 S.E.2d 468 (2000) (same); *Dubsky v. Advanced Cellular Communications*, No. 2003 CV 00652, 2004 WL 503757 (Ohio Com.Pl. Feb. 24, 2004) (same). *But cf. Carnett's, Inc. v. Hammond*, 279 Ga. 125, 610 S.E.2d 529 (2005) *and Damas v. Ergotron, Inc.*, No. 03–10667, 2005 WL 1614485 (Ill.Cir. July 6, 2005) (denying class certification).

11. *See, e.g., Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162 (S.D.Ind.1997); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D.Pa.1995).

ferent pension plans and some of the plans may not have been improperly reduced. *Id.*

The district court denied the plaintiff's motion for class certification and held that the "problem with the proposed class is that the merits of each class member's claim will have to be decided on an individual basis." *Id.* at 1104. The district court found that class certification was inappropriate because several "issues will have to be resolved in each individual case before members of the class would be entitled to relief." *Id.*

The district court's ruling was appealed to the Fifth Circuit court. On appeal, the defendant asserted that the district court was correct. The defendant argued that defining the class as those employees "whose pension benefits have been, or will be, reduced or eliminated as a result of the overestimation of their Social Security benefits" was a "circular" argument that would require the court to "first determine whether an employee's pension benefits were improperly reduced before that person may be said to be a member of the class." 994 F.2d at 1105. The Fifth Circuit rejected the defendant's argument as "meritless" and noted that if the argument was accepted, it would "preclude certification of just about any class of persons alleging injury from a particular action." *Id.* The court explained that the class members were "linked by [a] common complaint, and the possibility that some [class members] may fail to prevail on their individual claims will not defeat class membership." *Id.* Accordingly, the Fifth Circuit reversed the district court's ruling and remanded it with instructions to certify the class. *Id.* at 1106.

Likewise, in this case, Biopay has argued that defining the class as persons who have received unsolicited faxes is a circular argument that would require the court to first determine if the recipient had received an unsolicited fax. Relying on *Forman v. Data Transfer*, 164 F.R.D. 400 (E.D.Pa.1995), the defendants contend that determining whether a particular fax was unsolicited is "inherently individualized" because this court would

have to inquire into the particular circumstance of each transmission. *See id.* at 404.

However, adopting the defendants' arguments would present several problems for this court. First, as the Fifth Circuit predicted in *Forbush*, such arguments would preclude class certification on virtually any claim.[12] Second, the defendants' arguments seem inconsistent with Fifth Circuit precedent. The Fifth Circuit has held that "the test for commonality is not demanding" and has clarified that "the fact that some of the Plaintiffs may have different claims, or claims that may require some individualized analysis, is not fatal to commonality." *James*, 254 F.3d at 570.

Defendants have suggested that defining the class as all persons who have received unsolicited faxes would go to the heart of the merits of the case.[13] These fears appear to be unfounded. The cases that have found commonality in TCPA complaints have taken a different viewpoint. In those cases, courts have concluded that certifying a class of persons who have received unsolicited faxes does not reach the merits of the claim, rather it is "merely setting the boundaries of the class." *Travel 100 Group, Inc. v. Empire Cooler Serv., Inc.*, No. 03–14510, 2004 WL 3105679, *3 (Ill.Cir. Oct. 19, 2004). This court agrees and echoes the holding in *Forbush*. Accordingly, this court finds that the plaintiffs in this TCPA case are linked by a common complaint and the possibility that some may fail to prevail on their individual claims will not defeat class membership.

## C) Typicality

▮ The plaintiff asserts that the lead plaintiff's claim is not materially different from the rest of the class members and the interests of all the potential class members are aligned. Therefore, the plaintiff maintains that the typicality prong has been met.

The defendants argue that it is unclear if the class representative's claim is typical because although the class representative may

---

**12.** Adopting the defendants' arguments would almost certainly ensure that any TCPA claim would be un-certifiable if the class certification was opposed.

**13.** *See* Doc. 68 (Essex's Memorandum in Opposition, p. 11).

have received an unsolicited fax, it cannot be ascertained whether all the faxes received by the class members were unsolicited.

The defendants again rely on *Forman*. In that case, a district court held that the typicality prong was not met in a TCPA case because the claims of the class representative "[did] not arise from the same event or course of conduct that [gave] rise to the claims of the class members." 164 F.R.D. at 404.

Although *Forman* denied class certification, the rationale of *Forman* is inconsistent with Fifth Circuit precedent and inconsistent with the facts of the present case. The *Forman* court found the typicality prong was not met because "proof of the plaintiff's claim would not necessarily prove all the proposed class members' claims." 164 F.R.D. at 404. However, this is not the standard set out by the Fifth Circuit. In fact, the Fifth Circuit has recognized that the possibility that some putative class members may fail in their individual claims does *not* preclude class membership. *See Forbush*, 994 F.2d at 1105.

Like commonality, the test for typicality "is not demanding." *James*, 254 F.3d at 571. In *James*, the Fifth Circuit held that the claims of the putative class members and their representatives must arise from a similar course of conduct and share the same legal theory. *Id.* If these criteria are met, "factual differences will not defeat typicality." *Id.*

In this case, the putative class members allege that the same course of conduct, the sending of unsolicited faxes, and share the same legal theory, violation of the TCPA. Although the faxes may have been sent under a variety of different circumstances, that does not alter the fact that the underlying legal theory and alleged conduct is typical to that of the putative class.

### D) Adequacy of Representation

 To meet the requirements of Rule 23(a)(4), the class representatives must fairly and adequately represent the class. The plaintiff maintains that its attorneys are properly qualified and experienced to handle class action litigation. The defendants assert that this element cannot be met. Biopay argues that although the lead plaintiff has alleged that Biopay did not have permission to send it faxes, members of the proposed class may have given permission. Thus, the interests of the class representative and the proposed class members are not necessarily aligned.

In *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir.1999), the Fifth Circuit found that differences between named plaintiffs and class members will render the named plaintiffs inadequate representatives "only if those differences create conflicts between the named plaintiffs' interest and the class members' interests." Differences in the way named plaintiffs and class members prove causation and damages do not defeat adequacy. *Id.* Rather, the appropriate inquiry is "whether named plaintiffs have 'an insufficient stake in the outcome or interests antagonistic to the unnamed members.'" *Id.*

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), which involved a proposed asbestos class action, the Supreme Court found that the adequacy requirement was not met because exposure only plaintiffs would have interests antagonistic to those plaintiffs who were currently suffering from injuries. The Court reasoned that the currently injured plaintiffs would seek immediate payments, which would "tug against" the goal of exposure-only plaintiffs who desired an ample future fund. *Id.* at 595, 117 S.Ct. 2231. *See also O'Connor v. Boeing N. American, Inc.*, 180 F.R.D. 359, 375–76 (C.D.Cal.1997) (denying class certification in a proposed class composed of persons exposed to harmful substances when class would pit those already diagnosed with cancer against those who had not yet suffered a physical injury). Therefore, case precedent dictates that when the interests of the class representative can be pursued only at the expense of the interests of all class members and the resulting conflict cannot be resolved by the creation of subclasses, the conflict will render the plaintiff an inadequate representative.

In this case, however, the court is not faced with the situation like *Amchem* or

*O'Connor* where the plaintiffs may seek different types of awards due to their injuries. The lead plaintiff allegedly received an unsolicited fax and appears to desire the maximum relief for the class as a whole.[14] The fact that some plaintiffs may have difficulty proving their claim does not affect the alignment of their interests. As the defendants have not produced sufficient evidence that the putative class contains conflicts that would jeopardize the interests of the class members, this court finds that the adequacy of representation element has been met.

### III. Rule 23(b)

Having found that the putative class can meet the requirements of Rule 23(a), this court must now examine whether the class can meet the requirements of Rule 23(b). To prevail, the plaintiff must demonstrate that a class action is maintainable under 23(b)(1), 23(b)(2), or 23(b)(3).

Under the facts of the case, Rule 23(b)(3) appears to be the most appropriate grounds on which class certification can be based. To certify a class on this basis, the court must find that questions of law or fact common to the members of the class predominate over any questions affecting individual members and that a class action is superior to other methods of adjudication.

### A) Predominance

■ The plaintiff asserts that the common issues in this case predominate over any individual issues because the complaint alleges that each of the class members was sent an unsolicited fax and that Biopay did not have permission to send the transmissions.

Biopay asserts that individual issues do not predominate and Biopay predicts that if all claimants are included, it would require a

series of mini-trials before liability can be established.

The Fifth Circuit has stated that "in order to 'predominate' common issues must constitute a significant part of the individual cases." *Mullen,* 186 F.3d at 626. In *Mullen,* the class action alleged injuries arising from the defendant's air ventilation system. There, the putative class had common issues concerning negligence and seaworthiness. *Id.* at 625. Although that case involved several individual issues, such as causation, damages, and contributory negligence, the court found that common issues predominated. *Id.* at 626–27. The Fifth Circuit explained that the *Mullen* case was not plagued by the type of "individuated issues" that typically prohibit a finding of predominance. *Id.*

The Fifth Circuit court distinguished *Mullen* from *Castano v. Am. Tobacco Co.*[15] It found that in *Castano,* the putative class did not meet the predominance requirement because complex choice of law issues and a novel tort theory were present. Unlike *Castano,* in *Mullen,* the entire class was symptomatic and was exposed to the same source over the same general period of time. Furthermore, there were no choice-of-law issues or novel tort theories involved in *Mullen.*

Likewise, in this case, the putative class is not plagued with the problems faced by the *Castano* court. There are no choice of law issues relevant to class certification[16] nor does a novel tort theory exist. Thus, this court does not find the type of "individuated issues" that would preclude a finding that predominance exists.

In so doing this court reaches a different conclusion than the court in *Forman,* 164 F.R.D. 400. The *Forman* court denied class certification in a TCPA case because the "gravamen of plaintiff's complaint is not a

---

14. *See In re Corrugated Antitrust Litigation,* 643 F.2d 195, 208 (5th Cir.1981) (concluding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes").

15. *See generally Castano v. Am. Tobacco Co.,* 84 F.3d 734 (5th Cir.1996).

16. The court acknowledges that a choice of law issue exists in this case. However, it relates to insurance coverage provisions and whether the policies issued by defendants Essex and Evanston cover Biopay's alleged transmission of unsolicited faxes. Irrespective of the choice of law issues affecting the insurance provisions, the parties agree that federal law governs the underlying complaint that Biopay allegedly transmitted unsolicited faxes.

common course of conduct by the defendant, but rather a series of individual transmissions under individual circumstances, each of which is an alleged violation of the statute. Lacking a single set of operative facts, it is difficult to see how common questions, if any, predominate." *Id.* at 404.

*Forman* is factually inapposite to the case at hand. In this case, the plaintiff alleges that Biopay "contracted with VisionLab Communications, Inc. [. . .], a Canadian fax broadcaster, to send thousands of fax advertisements to fax numbers in Louisiana." [17] Indeed, the transmission logs produced by Biopay show over 4,000 transmissions. This alleged behavior does not suggest "individual transmissions under individual circumstances" but rather a common course of conduct, fax blasting. *See also Travel 100 Group,* 2004 WL 3105679, *3. The *Travel 100 Group* court concluded that *Forman* and other court decisions holding that fax transmissions require individualized inquiry "belie a misunderstanding of telephone facsimile advertising as alleged in the complaint." *Id.* The court explained that *Forman* and its progeny "seem to resolve the matter based on a belief that this form of messaging is occasional or sporadic and not an organized program. To the contrary, the facts before this Court yield that this Defendant engaged a third party to send more than 3,000 facsimiles to targeted businesses." *Id.* This court is in accord with those cases that have found that the common course of conduct alleged in the TCPA complaint predominate over the individual issues.

## B) Superiority

■ The plaintiff maintains that a class action provides the superior method for the adjudication of this dispute because of considerations for judicial economy and because it is improbable that individual litigants would possess the incentive to litigate individually.

Biopay argues that a class action is not the superior method because Congress consciously choose to provide for individual enforcement of the TCPA.[18]

The defendants once again rely on *Forman.* In *Forman,* the court held that a class action was not the superior form of adjudicating TCPA claims because the TCPA provides a minimum of $500 and up to $1500 if the plaintiff can show a willful violation. 164 F.R.D. at 404. The *Forman* court concluded that "this most likely exceeds any actual monetary loss in paper, ink, or lost facsimile time suffered by most plaintiffs in such a case. The statutory remedy is designed to provide adequate incentive for an individual plaintiff to bring suit on his own behalf." *Id.*

This court recognizes that some courts have denied class certification in TCPA cases based upon a belief that Congress did not intend for TCPA suits to be brought as class actions. *See, e.g., Kim v. Sussman,* No. 03–07663, 2004 WL 3135348, at *2 (Ill.Cir. Oct. 19, 2004). However, there is no express Congressional directive consistent with that belief.

Rule 23 permits class actions to be brought to "enhance the efficacy" of private actions. *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,* 203 Ariz. 94, 50 P.3d 844, 850 (2002) (citing the Supreme Court in *Hawaii v. Standard Oil Co. of Cal.,* 405 U.S. 251, 266, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972)). The *ESI* court noted that "class action relief is unavailable only if Congress expressly excludes it." [19] Indeed, Congress has on occasion limited class action suits. *See, e.g.,* 15 U.S.C. § 6614 (limiting Y2K class actions). In this case, Congress has not provided limitations or restrictions on the ability of a plaintiff to bring a class action suit under the TCPA.

The putative class in this matter will number in the thousands. The plaintiff has shown that for reasons of judicial economy a class action is the superior method for the

---

**17.** Doc. 58 (Plaintiff's Memorandum in Support of Motion for Class Certification, p. 1).

**18.** Biopay also argues that a class action would require hundreds of individual inquiries. *See* Doc. 69, p. 26. However, as this argument has

been repeatedly addressed in this opinion, there is no need to address it again.

**19.** *See, e.g., Califano v. Yamasaki,* 442 U.S. 682, 699–700, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

resolution of this dispute. Further, in light of the fact that Congress has not expressly banned class actions in TCPA litigation, this court is unable and unwilling to impose such a limitation sua sponte.

As explained earlier in this opinion, although this decision has fallen in line with those cases which have granted class certification in TCPA cases, this court is well aware of those cases that have denied class certification in TCPA litigation. The court is mindful of the concerns expressed by other courts and by the defendants that class certification may result in a slew of mini-trials to determine individual issues regarding whether the faxes were unsolicited. However, unlike some other courts, this court does not believe that the *possibility* that might happen should preclude class certification status. As the Fifth Circuit noted, concerns "regarding the necessity of individual determinations are important but not . . . dispositive, at least at this stage of the litigation." *Forbush*, 994 F.2d at 1106.

The parties should be reminded that the decision to certify the class need not be a final one. In fact, "district courts retain substantial discretion in managing their cases and, should the conditions apprehended by [the opposition] materialize, the district judge may of course take measures, such as redefining the class and creating sub-classes, to resolve this dispute with fairness and efficiency." *Id.* Nevertheless, "concerns that the course of the lawsuit may require modifications to the class structure, however, should not serve to defeat [class certification] at the outset." *Id.* The court recognizes its obligation to "define, redefine, subclass, and decertify [a class] as appropriate in response to the progression of the case from assertion to facts." *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir.1983). *See also* Fed. R.Civ.P. 23(c)(1)(C) (permitting a court to alter or amend an order certifying a class before final judgment). Therefore, should the defendants' myriad of predictions come true and should class certification prove unworkable, the court will make the necessary changes to remedy any problems that have manifested, including decertifying the class.

*CONCLUSION*

For the reasons stated herein, the plaintiff's Motion for Class Certification is hereby GRANTED.