Blitz v. Agean, Inc., 2007 NCBC 21

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF DURHAM | 05 CVS 441 |

JONATHAN BLITZ, on behalf of himself
and all others similarly situated,

        Plaintiff,

   v.

AGEAN, INC.,

        Defendant.

ORDER & OPINION

*The Margulis Law Group by Max G. Margulis and J. Blake Norman
Attorney-at-Law by J. Blake Norman for Plaintiff Jonathan Blitz, on behalf
of himself and all others similarly situated.*

*Hoof & Hughes, PLLC by J. Bruce Hoof for Defendant Agean, Inc.*

Diaz, Judge.

{1}    The Court heard this matter on 19 February 2007 on the Motion of
Plaintiff Jonathan Blitz ("Blitz") for Class Certification pursuant to Rule 23 of the
North Carolina Rules of Civil Procedure. For the reasons set forth below, and after
considering the Court file, the written Motion, and counsel's memoranda and oral
arguments, the Court **DENIES** the Motion.

I.

PROCEDURAL BACKGROUND

{2}    Blitz filed his Complaint on 28 January 2005 in Durham County Superior
Court. Blitz filed an Amended Complaint on 11 February 2005, and the case was
transferred to the North Carolina Business Court and assigned to me as an
exceptional matter on 20 January 2006.

{3}    On 6 October 2006, Blitz filed a Motion to Amend Class Definition.

{4}     On 17 October 2006, Blitz filed a Motion for Class Certification.

{5}     Defendant Agean, Inc. ("Agean") filed a response to Blitz's Motion to Amend Class Definition on 26 October 2006 and a Revised Brief in Opposition to Blitz's Motion for Class Certification[1] on 13 November 2006.

{6}     Blitz filed a Reply to Agean's Brief in Opposition to Class Certification on 22 November 2006, and he filed a Citation to Supplemental Authority in Support of the Motion for Class Certification on 1 February 2007.

{7}     The Court heard oral arguments on the Motion for Class Certification on 19 February 2007.


II.

THE FACTS

A.

THE PARTIES

{8}     Blitz is a resident of Durham County, North Carolina.  (Am. Compl. ¶ 1.)

{9}     Agean is a North Carolina corporation that operates a restaurant known as "Papas Grille" in Durham, North Carolina.  (Am. Compl. ¶ 2; Def.'s Revised Br. Opp'n Pl.'s Mot. Class Certification Ex. A, at 4.)

B.

THE CLAIMS

{10}   Since Papas Grille has been in operation, it has, on average, served between 120 and 160 meals per day.  (Def.'s Revised Br. Opp'n Pl.'s Mot. Class Certification Ex. A, at 5.)  Based on that estimate, Papas Grille has served more than 500,000 meals in its twelve years of operation.  (Def.'s Revised Br. Opp'n Pl.'s Mot. Class Certification Ex. A, at 5.)

{11}   From its inception as a going concern, Papas Grille has also received numerous inquiries concerning its hours, menus, accommodations, and capacity;

---

[1] On 8 November 2006, the Court denied Agean's Motion to Modify Length Requirement of Brief and struck Agean's original Brief in Opposition to Blitz's Motion for Class Certification for failure to comply with Rule 15.8 of the General Rules of Practice and Procedure for the North Carolina Business Court.  (Order, Nov. 8, 2006.)

and numerous requests that Papas Grille fax or e-mail its menus and other materials relating to the restaurant or its services. (Def.'s Revised Br. Opp'n Pl.'s Mot. Class Certification Ex. A, at 4–5.)

{12} Papas Grille provides its customers with "customer information cards" which they may, but are not required to, complete. (Def.'s Revised Br. Opp'n Pl.'s Mot. Class Certification Ex. A, at 5.) Although Papas Grille maintains a customer list based on completed customer information cards, it does not maintain an exhaustive list of its contacts or patrons. (Def.'s Revised Br. Opp'n Pl.'s Mot. Class Certification Ex. A, at 5.)

{13} In April 2004, Agean purchased a list of over 900 fax numbers for businesses in the three zip codes surrounding Papas Grille (the "List"). (Mem. Supp. Pl.'s Mot. Class Certification Ex. 2; Mem. Supp. Pl.'s Mot. Class Certification Ex. 3, Papanikas Dep. 60:22–61:4, 66:5–8, 93:17–18, Sept. 6, 2006.)

{14} After it purchased the List, Agean contracted with nonparty Concord Technologies to send fax advertisements to the numbers on the List. (Mem. Supp. Pl.'s Mot. Class Certification Ex. 3, Papanikas Dep. 88:9–96:8; Mem. Supp. Pl.'s Mot. Class Certification Ex. 4.)

{15} Agean did not know, and made no effort to determine, whether any of the businesses on the List had contacted or been customers of Papas Grille, or whether any of them had given Agean permission to send them fax advertisements. (Mem. Supp. Pl.'s Mot. Class Certification Ex. 3, Papanikas Dep. 73:10–77:4.)

{16} During 2004, Concord Technologies successfully transmitted 7,000 fax advertisements to the numbers on the List on behalf of Agean.[2] (*Compare* Mem. Supp. Pl.'s Mot. Class Certification Ex. 2 *with* Mem. Supp. Pl.'s Mot. Class Certification Ex. 3, Papanikas Dep. 104:20–106:2.)

{17} Blitz received several of these fax advertisements. (Mem. Supp. Pl.'s Mot. Class Certification Ex. 5, Blitz Dep. 73:3–11, 73:21–74:6, Sept. 6, 2006.)

---

[2] The fax advertisements stated the hours and location of Papa's Grille and included a coupon for a free cup of coffee or lunch. (Mem. Supp. Pl.'s Mot. Class Certification Ex. 1.)

{18} Blitz alleges that Agean's fax advertisements violated the Federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which, *inter alia*, prohibits the transmission of "unsolicited advertisements" to fax machines. (Am. Compl. ¶ 10.)

{19} Blitz seeks certification on behalf of a class alleging that Agean violated the TCPA when its agent, Concord Technologies, faxed thousands of single-page unsolicited advertisements regarding Agean's services. (Am. Compl. ¶ 10.)

{20} Pursuant to the TCPA, Blitz seeks $500 in statutory damages for each member of the putative class, statutory treble damages based on allegations that the violations were willful or knowing, and injunctive relief. (Am. Compl. Prayer for Relief ¶¶ 2–3.)

III.

CONCLUSIONS OF LAW

{21} Blitz's Motion for Class Certification defines the proposed class as:

> All persons and other entities to whom Defendant sent or caused to be sent, one or more facsimile advertisement transmissions promoting the restaurants of Defendant from February 12, 2001 until February 11, 2005 inclusive, and excluding those persons and other entities who had an established business relationship with Defendant at the time said facsimile advertisement transmissions were sent.[3]

(Pl.'s Mot. Class Certification 6.)

{22} This Court addressed the issue of class certification under the TCPA in *Blitz v. Xpress Image, Inc.*, 2006 NCBC 10 (N.C. Super. Ct. Aug. 23, 2006), http://www.ncbusinesscourt.net/opinions/2006%20NCBC%2010.htm. In that case, the Court denied class certification on the grounds that (1) issues individual to each purported class member predominated over common issues, and (2) a class action was not the superior method for resolving the claims. *Id.* ¶ 1.

---

[3] Blitz defines his proposed class in a manner different from that originally pled in his Amended Complaint. (*See* Am. Compl. Prayer for Relief ¶ 1.) Although Agean objects to the purported amendment, the Court overrules the objection and elects to consider the newly defined class.

{23} In his moving papers, Blitz attempts to distinguish the present case from *Xpress Image* on four grounds: (1) Agean, unlike the defendant in *Xpress Image*, admits that it did not seek permission to send the fax advertisements, (2) Agean, unlike the defendant in *Xpress Image*, purchased an anonymous list of fax numbers rather than gathering them from a directory of fellow chamber of commerce members, (3) Blitz has excluded entities that have existing business relationships with Agean from his class definition, and (4) new case law supports class certification under the TCPA. (Mem. Supp. Pl.'s Mot. Class Certification 14–18; Pl.'s Reply Def.'s Br. Opp'n Class Certification 2–5, 8–9.)

{24} Because, however, the factors identified in Blitz's moving papers do not distinguish this case from *Xpress Image*, the Court, consistent with its opinion in *Xpress Image*, **DENIES** Blitz's Motion for Class Certification.

A.

CLASS CERTIFICATION STANDARD

{25} In North Carolina, class actions are governed by Rule 23 of the North Carolina Rules of Civil Procedure ("Rule 23"). Rule 23(a) provides that "[i]f persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued." N.C. R. Civ. P. 23(a).

{26} "The party seeking to bring a class action under Rule 23(a) has the burden of showing that the prerequisites to utilizing the class action procedure are present." *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 282, 354 S.E.2d 459, 465 (1987).

{27} The requirements for class action certification are: (1) the existence of a class, (2) the class members within the jurisdiction of the court must adequately represent any class members outside the jurisdiction of the court, (3) the class must be so numerous as to make it impracticable to bring each member before the court, (4) more than one issue of law or fact common to the class should be present, (5) the party representing the class must fairly insure the representation of all class

members, and (6) adequate notice must be given to the class members.  *Id.* at 282–84, 354 S.E.2d at 465–66.

{28} "[A] 'class' exists under Rule 23 when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members."  *Id.* at 280, 354 S.E.2d at 464.

{29} To determine whether common issues predominate over issues affecting only individual class members, the Court does not simply line up the number of common issues against those that require individual consideration.  Rather, the test is whether the individual issues are such that they will predominate over common ones in terms of being the focus of the litigants' efforts.  *See Harrison v. Wal-Mart Stores, Inc.*, 170 N.C. App. 545, 550–53, 613 S.E.2d 322, 327–28 (2005); *see also Kondos v. Lincoln Prop. Co.*, 110 S.W.3d 716, 721 (Tx. Ct. App. 2003) (observing the same in the TCPA context).

{30} Further, "[w]here all the prerequisites are met, it is within the trial court's discretion to determine whether 'a class action is superior to other available methods for the adjudication of th[e] controversy.'"  *Harrison*, 170 N.C. App. at 548, 613 S.E.2d at 326 (quoting *Crow*, 319 N.C. at 284, 354 S.E.2d at 466).  "'[T]he trial court has broad discretion in [deciding whether a class action should be certified] and is not limited to consideration of matters expressly set forth in Rule 23 or in' case law."  *Id.* at 548 n.2, 613 S.E.2d at 326 n.2 (quoting *Crow*, 319 N.C. at 284, 354 S.E.2d at 466).

## B.

### PREVALENCE OF INDIVIDUALIZED INQUIRIES

{31} The TCPA prohibits only "unsolicited" advertisements, *see* 47 U.S.C.S. § 227(c) (LEXIS through 2007 legislation), which are defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission."  47 U.S.C.S. § 227(a)(5) (LEXIS through 2007 legislation).  Under the TCPA, a person can give their "express invitation or permission" to receive fax

advertisements either "orally or in writing." *Carnett's, Inc. v. Hammond*, 610 S.E.2d 529, 531 (Ga. 2005); *see also Livingston v. U.S. Bank, N.A.*, 58 P.3d 1088, 1091 (Col. Ct. App. 2002) (noting that "the TCPA does not require consent to be given in writing, and it may be given orally").

{32} Furthermore, several courts, including this Court, have interpreted the TCPA to include an exception from liability for fax advertisements sent to any entity with which the sender has an "established business relationship." [4] *See Xpress Image*, 2006 NCBC 10 ¶¶ 32–36.

{33} As originally enacted, the TCPA established an exception for automated telephone solicitations made to "any person with whom the caller has an established business relationship." 47 U.S.C.S. § 227(a)(4) (LEXIS through 2007 legislation). Pursuant to 47 U.S.C. § 227(b)(2), which authorizes the Federal Communications Commission ("FCC") to issue regulations interpreting the TCPA, the FCC defined an "established business relationship" as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration . . . which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(4) (2006).

{34} In a subsequent order interpreting the TCPA, the FCC determined that the "established business relationship" exception also applied to the provisions prohibiting unsolicited facsimile advertisements. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 8752, 8779 n.87 (Oct. 16, 1992) (stating that "facsimile transmission from persons or entities who have an established business relationship with the recipient can be deemed to be invited or permitted by the recipient").[5]

---

[4] As he did in *Xpress Image*, Blitz argues that there is no "established business relationship" exemption from liability under the TCPA. (Mem. Supp. Pl.'s Mot. Class Certification 16–17; Pl.'s Reply Def.'s Br. Opp'n Class Certification 8–9.) In *Xpress Image*, the Court, after much discussion, determined that there is an "established business relationship" exemption under the TCPA and that the Court could consider it on a motion for class certification. 2006 NCBC 10 ¶¶ 47–51. Having so concluded in its previous opinion, the Court declines to revisit that issue here.

[5] In 2005, Congress enacted the Junk Fax Prevention Act of 2005 ("JFPA"), 47 U.S.C. § 227(b)(1)(C), which amended the TCPA to codify the "established business relationship" exception to TCPA liability in the facsimile context. 47 U.S.C.S. § 227(b)(1)(C)(i) (LEXIS through 2007 legislation).

{35}   In *Xpress Image*, this Court held that class certification of claims arising under the TCPA was improper because issues individual to each recipient of the defendant's fax advertisement, i.e., whether the defendant had either "prior express invitation or permission" to send fax advertisements to a recipient or an "established business relationship" with a recipient, would predominate over issues common to the entire class.  2006 NCBC 10 ¶¶ 37–60.

{36}   Blitz argues that issues individual to each recipient of Agean's fax advertisement will not predominate over issues common to the proposed class in this case because:  (1) Agean did not seek permission to send the fax advertisements, (2) Agean purchased an anonymous list of fax numbers rather than gathering them from a directory of fellow chamber of commerce members, and (3) Blitz has excluded entities that have established business relationships with Agean from his class definition.  (Mem. Supp. Pl.'s Mot. Class Certification 14–18; Pl.'s Reply Def.'s Br. Opp'n Class Certification 2–5, 8–9.)

{37}   The first two distinctions, Blitz argues, show that whether Agean had "express permission" to send fax advertisements to a recipient will not be an issue here because "any claim to express invitation or permission to send the faxes in this case is completely without both merit or [sic] even a scintilla of evidence."[6]  (Mem. Supp. Pl.'s Mot. Class Certification 5, 14–15.)  He continues that the hypothetical existence of individual issues for which there is little basis in fact is not a sufficient basis to deny class certification.  (Mem. Supp. Pl.'s Mot. Class Certification 5.)

{38}   In *Xpress Image*, however, I found that the record was silent as to evidence that the defendant sought or received "prior express permission or invitation" from any of the recipients to send the facsimile advertisements.  *See* 2006 NCBC 10 ¶ 22.  I then concluded that this void in the record was "not dispositive, as the Court would still be required to conduct an individualized inquiry of each purported class

Although this provision of the JFPA does not apply to the present case, it provides support for the Court's position that Congress always intended for the "established business relationship" exception to apply to facsimile advertisements.

[6] The Court also understands Blitz's argument to be that, unlike *Xpress Image*, where the record was silent as to proof of express permission or invitation, there is evidence here to show that no recipient gave Agean express permission or invitation to send the fax advertisement.

member to determine whether each class member gave 'prior express invitation or permission.'" *Id.* ¶ 43.

{39}   Thus, that Agean made no effort to determine whether any of facsimile recipients had given prior express invitation or permission to receive the advertisements does not distinguish this case in any significant way from *Xpress Image*.  Because the List includes facsimile numbers in the three zip codes surrounding Papas Grille, it is likely that some of the recipients had given prior express permission.  Thus, just as in *Xpress Image*, "there is no avoiding an individualized inquiry into the facts and circumstances of each recipient's 'invitation and permission' should this matter proceed as a class action, and this is so regardless of what the evidence now tends to show on the issue." *Id.* ¶ 46.

{40}   Furthermore, the Court cannot avoid an individualized inquiry into the facts and circumstances of each recipient's "prior express invitation or permission" regardless of who bears the burden of proof on this issue.[7]  As the Court stated in *Xpress Image* and reiterates here:

> whether the issue is denominated an element of the claim or an affirmative defense is . . . immaterial on the question of class certification.  The point remains that if a class is certified, this Court will need to make individual determinations as to whether a recipient gave permission to receive the facsimile advertisements.

2006 NCBC 10 n.9.  As in *Xpress Image*, the predominance of this individualized issue is sufficient to deny class certification here.

{41}   Even if it was not, however, the issue of whether each recipient had an "established business relationship" with Agean is another basis for denial of Blitz's Motion for Class Certification.

{42}   Blitz argues that the Court can avoid determining whether each recipient had an "established business relationship" with Agean because he has excluded

---

[7] Blitz argues that the Defendant in an action under the TCPA bears the burden of proof to demonstrate that it had permission to send the fax advertisement.  (Pl.'s Reply Def.'s Br. Opp'n Class Certification 2–5.)  However, in *Xpress Image*, this Court held that the issue of "express invitation or permission" is part of each individual plaintiff's burden.  *Id.* ¶ 40 (citing *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995)).

such entities from his class definition. (Mem. Supp. Pl.'s Mot. Class Certification 15–16.)

{43} Blitz claims that "if any inquiry into existence of an [established business relationship] occurs, it will occur at the claims processing stage of this proceeding . . . [where] potential class members must answer questions in writing on the claim form to determine if they are members of the class . . . ." (Mem. Supp. Pl.'s Mot. Class Certification 15.)

{44} The Court finds Blitz's argument on this point unpersuasive.

{45} Here, as in *Xpress Image*, it is undisputed that Agean sent fax advertisements exclusively to recipients in the geographic area near its restaurant. (Mem. Supp. Pl.'s Mot. Class Certification Ex. 2; Mem. Supp. Pl.'s Mot. Class Certification Ex. 3, Papanikas Dep. 60:22–61:4, 66:5–8, 93.)

{46} Given that, during the twelve years that Papas Grille has been in operation, it has, on average, served between 120 and 160 meals per day (Def.'s Revised Br. Opp'n Pl.'s Mot. Class Certification Ex. A, at 5), and that Papas Grille has received numerous inquiries concerning its hours, menus, accommodations, and capacity; and numerous requests that Papas Grille fax or e-mail its menus and other materials relating to the restaurant or its services (Def.'s Revised Br. Opp'n Pl.'s Mot. Class Certification Ex. A, at 4–5), it is highly likely that Agean has an established business relationship with at least some of the recipients of its fax advertisements.

{47} Thus, the Court, as in *Xpress Image*, would have to determine "who among the class are [Agean's] prior customers and who . . . may have visited [Agean's] business or made an inquiry regarding [Agean's] services by telephone, the internet, or otherwise . . . as those putative plaintiffs arguably fall within the 'established business relationship' exception." 2006 NCBC 10 ¶ 59.

{48} This inquiry cannot be avoided merely by defining the class in such a way as to exclude entities that have an established business relationship with Agean. As the Court stated in *Xpress Image*, "[r]egardless of how the class is defined . . . the question a court must always address at the certification stage is whether

individual issues regarding the putative class members will predominate over common ones with regard to the focus of the litigants' efforts." *Id.* ¶ 45 (emphasis added).

{49} Furthermore, it would be inappropriate for the Court to determine which recipients of Agean's fax advertisement had an "established business relationship" with Agean during the claims processing stage of a class action lawsuit.

{50} Determining whether a potential class member has an "established business relationship" with Agean is a multifaceted inquiry where both the potential class member and Agean are entitled to present evidence for and against the existence of the relationship.

{51} Given that anyone who visited Papas Grille or made an inquiry regarding Agean's services by telephone, the internet, or otherwise arguably falls within the "established business relationship" exception, *see* 47 C.F.R. § 64.1200(f)(4) (2006), determining whether a facsimile recipient had an "established business relationship" with the Defendant would require a jury to weigh a variety of evidence any time Agean contested the issue.

{52} As Agean notes, the inquiry is further complicated here because the fax advertisements were sent to businesses, rather than to individuals. (Def.'s Revised Br. Opp'n Pl.'s Mot. Class Certification 8.) Since an "established business relationship" arguably exists between Agean and a business if any of the business's employees visited Papas Grille or made an inquiry regarding Agean's services, *see* 47 C.F.R. § 64.1200(f)(4) (2006), the Court would be required to determine the identities of the business's employees and the extent of each employee's contact with Agean to determine Agean's liability to the recipient under the TCPA.[8] (Def.'s Revised Br. Opp'n Pl.'s Mot. Class Certification 9.)

---

[8] The Court expresses no opinion as to whether a business has an "established business relationship" with Agean on account of contacts between Agean and the business's employees. Rather, the Court merely states that such contacts must be considered in determining the existence of such a relationship.

{53} Thus, contrary to Blitz's suggestion,[9] the Court may not decide this issue based solely on a potential class member's answer to a question on a claim form. Certainly, a claim form could remove those potential class members who admitted they visited Papas Grille or made an inquiry regarding Agean's services from the class; however, the Court would still have to determine whether those potential class members who denied visiting Papas Grille or making an inquiry regarding Agean's services actually had an "established business relationship" with Agean any time Agean asserted that such a relationship existed.

{54} As in *Xpress Image*, this "established business relationship" analysis, which is individual to each potential class member, will, along with the issue of a recipient's express invitation or permission, be the likely object of most of the litigants' efforts, and, therefore, provides an additional basis for denying class certification.

## C.

## SUPERIORITY

{55} In *Xpress Image*, the Court found that there was no bar to pursuing the TCPA's $500.00 statutory remedy in small claims court, and Blitz has not presented any evidence to assail that conclusion.[10]

{56} As the Court stated in *Xpress Image* and reiterates here:

> In light of this reasonably available and relatively convenient alternative forum, and because proceeding via a class action would require a series of mini-trials as to the issues of "express permission" and an "established business relationship" for an indeterminate number of the [recipients] sought to be joined in this lawsuit, I find (in

---

[9] In his moving papers, Blitz suggests that determining whether a potential class member had an "established business relationship" with Agean could be answered by simply asking them if they had eaten at Papas Grille. (Mem. Supp. Pl.'s Mot. Class Certification 15–16.) Such an approach, however, ignores the myriad ways in which an "established business relationship" might be created.

[10] As in *Xpress Image*, Blitz's Amended Complaint seeks injunctive relief, a remedy explicitly authorized under the TCPA, *see* 47 U.S.C.S. § 227(b)(3)(A) (LEXIS through 2007 legislation), and not available in small claims court. *See* N.C. Gen. Stat. § 7A–210 (LEXIS through 2007 legislation). Other than the advertisements that form the basis for Blitz's Amended Complaint, however, Blitz has presented no evidence that Agean has committed other TCPA violations such that an injunction is necessary to grant complete relief.

the exercise of my substantial discretion) that a class action is neither a feasible nor a superior method for resolving the claims.

2006 NCBC 10 ¶ 62.

{57} The fact that a class action is not superior to other available methods for resolving the individual claims is another reason to deny class certification here.

D.

RECENT DECISIONS

{58} Finally, Blitz cites three recent decisions from foreign jurisdictions, *Kavu, Inc. v. Omnipak Corp.*, No. C06–109RSL, 2007 U.S. Dist. LEXIS 5207 (W.D. Wash. Mar. 13, 2007), *Gene & Gene, Inc. v. Biopay, LLC*, 240 F.R.D. 239 (M.D. La. Dec. 20, 2006), and *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Okla. Civ. App. 2006), that support his Motion for Class Certification.  Blitz asserts that these recent decisions, all entered since the Court's holding in *Xpress Image*, justify class certification here. (*See* Pl.'s Reply Def.'s Br. Opp'n Class Certification 1–2; Citation Supplemental Authority Supp. Pl.'s Mot. Class Certification.)

{59} The Court, having considered each opinion, disagrees.

{60} In *Kavu*, *Biopay*, and *Lampkin*, each court found that issues common to the class would predominate over issues individual to each potential class member, *see Kavu*, 2007 U.S. Dist. LEXIS 5207, at *9–13, *22; *Biopay*, 240 F.R.D. at 242–43; *Lampkin*, 146 P.3d at 852, 855, and consequently determined that a class action was a superior method for adjudicating claims under the TCPA.  *See Kavu*, 2007 U.S. Dist. LEXIS 5207, at *20–24; *Biopay*, 240 F.R.D. at 246–47; *Lampkin*, 146 P.3d at 855–56.

{61} Although each court recognized that whether the defendant had either "express permission" to send fax advertisements to a potential class member or an "established business relationship" with a potential class member would be an issue in the case, *see Kavu*, 2007 U.S. Dist. LEXIS 5207, at *9–11; *Biopay*, 240 F.R.D. at

243, 247; *Lampkin*, 146 P.3d at 852, 855, none of the courts discussed how they proposed to decide the issue without a series of mini-trials.[11]

{62}   This Court, like the courts in *Kavu*, *Biopay*, and *Lampkin*, recognizes that there are several factual and legal issues in this case that would be common to all potential class members.  However, this Court takes a different view as to which issues, those common to the potential class or those individual to each potential class member, will predominate.

{63}   Because, I find that the issues individual to each potential class member will be the object of most of the litigants' efforts, I respectfully disagree with the reasoning of the *Kavu*, *Biopay*, and *Lampkin* courts.

IV.

CONCLUSION

{64}   The Court **DENIES** Blitz's Motion for Class Certification.


This the 25th day of June, 2007.

---

[11] In *Biopay*, the court recognized the difficulty it might encounter after it certified a class action under the TCPA.  240 F.R.D. at 247.  The court stated that it was "mindful of the concerns expressed by other courts and by the defendants that class certification may result in a slew of mini-trials to determine individual issues regarding whether the faxes were unsolicited." *Id.*  Therefore, the court stated that "should the defendants' myriad of predictions come true and should class certification prove unworkable, the court will make the necessary changes to remedy any problems that have manifested, including decertifying the class." *Id.*